IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CARL HARRISON, | ) | CV F 03-5122 OWW WMW HC |
| | ) | |
| Petitioner, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER RE PETITION |
| v. | ) | FOR WRIT OF HABEAS |
| | ) | CORPUS |
| | ) | |
| MULE CREEK STATE PRISON, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |

Petitioner is a state prisoner who is proceeding pro se on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this court.  This case proceeds on the first amended petition filed September 10, 2003, and the amendment to that petition filed June 4, 2007.  Respondent opposes the petition.

## BACKGROUND

On November 2, 1994, following a trial in Fresno County Superior Court, a jury convicted Petitioner of the following:

1   1) count one: Penal Code Section 286(c)[1] (forcible sodomy with child under age 14 and more

2   than 10 years younger than Harrison), victim Tony R.; 2) counts two through six :  Section

3   288a(c) (forcible oral copulation with child under age 14 and more than 10 years younger

4   than Harrison), victim Tony R.; 3) counts seven and eight: Section 288a(c), victim Victor R.

5   4) count nine: Section 286(c), victim Jeffrey R.; 5) count ten: Section 288a(c), victim Jeffrey

6   R.; 6) counts eleven and twelve: Section 288a(c), victim Andrea G.; 7) count thirteen:

7   Section 288(a)(lewd and lascivious act on child under age 14), victim Andrea G.; 8) count

8   fourteen: Section 261, (a)(2) (forcible rape), victim Janiva P.; 9) count sixteen, Section 242

9   (battery, a lesser included offense of Section 273.5, infliction of corporal injury on

10  cohabitant), victim Cynthia E.; 10) count seventeen, Section 207 (b) (kidnaping a child under

11  age 14 for the purpose of committing a violation of Section 288), victim Sylvia G.; 11)

12  counts eighteen through twenty one and twenty-three, Section 288(a), victim Sylvia G; 12)

13  count twenty-two, Section 243.4 (sexual battery, a lesser included offense of Section 288(a),

14  victim Sylvia G.

15      In regard to counts one through fourteen, eighteen through twenty-one, and twenty-

16  three, the jury also found true the special allegation that in committing the offenses, Harrison

17  engaged in substantial sexual conduct with a child under age 14 (Section 1203.066(a)(8).

18      The judge sentenced Petitioner to a total unstayed term of 121 years in prison and

19  ordered him to pay a fine of $4000.

20      Petitioner filed a timely direct appeal with the California Court of Appeal, Fifth

21  Appellate District.  The Court of Appeal reversed the trial court's finding that Petitioner was

22  a vexatious litigant, because that designation only pertained to civil litigants in California.

23  The Court of Appeal affirmed the judgment.

24      Petitioner filed a petition for review with the California Supreme Court.  The court

25

26          [1]Unless otherwise indicated, all further statutory references are to the California Penal

27  Code.

28                                              2

denied the petition on January 16, 2002.

Petitioner filed two petitions for writ of habeas corpus in Superior Court.  The first petition was filed on September 10, 2003, and denied on September 16, 2003.  The second petition was filed on August 11, 2004, and denied on August 26, 2004.

Petitioner filed five petitions for writ of habeas corpus in the Court of Appeal.  The first was filed on September 10, 2003, and denied on July 6, 2004.  The second was filed on January 27, 2004, and denied on July 7, 2004.  The third was filed on August 12, 2004, and denied on December 3, 2004.  The fourth was filed on January 25, 2005, and denied on April 3, 2006.  The fifth was filed on July 6, 2005, and denied on April 3, 2006.

On June 22, 2006, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court.  The court denied the petition on January 17, 2007.

Respondent admits that Petitioner has exhausted his state judicial remedies as to the claims raised in this petition.  Petitioner filed the present petition on January 13, 2003.

## LEGAL STANDARDS

### JURISDICTION

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a);  28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 120 S.Ct. 1495, 1504 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  In addition, the conviction challenged arises out of the Fresno  County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522

U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997)

(quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107,

117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117

S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

The instant petition was filed after the enactment of the AEDPA, thus it is governed by its

provisions.

STANDARD OF REVIEW

      This court may entertain a petition for writ of habeas corpus "in behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

      The AEDPA altered the standard of review that a federal habeas court must apply

with respect to a state prisoner's claim that was adjudicated on the merits in state court.

Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for

habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States;" or "resulted in a decision that

was based on an unreasonable determination of the facts in light of the evidence presented in

the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 123 S.Ct. 1166, 1173

(2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143

(9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court

may not issue the writ simply because that court concludes in its independent judgment that

the relevant state-court decision applied clearly established federal law erroneously or

incorrectly."  Lockyer, at 1174 (citations omitted).  "Rather, that application must be

objectively unreasonable."  Id. (citations omitted).

      While habeas corpus relief is an important instrument to assure that individuals are

constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

4

(1983); <u>Harris v. Nelson</u>, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Purkett v. Elem</u>, 514 U.S. 765, 115 S.Ct. 1769 (1995); <u>Thompson v. Keohane</u>, 516 U.S. 99, 116 S.Ct. 457 (1995); <u>Langford v. Day</u>, 110 F.3d 1380, 1388 (9th Cir. 1997).

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55 (1991);  <u>Rose v. Lundy</u>, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982); <u>Buffalo v. Sunn</u>, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court.  <u>Picard v. Connor</u>, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); <u>Johnson v. Zenon</u>, 88 F.3d 828, 829 (9th Cir. 1996).  Where the California Supreme Court's opinion is summary in nature, this court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); <u>see</u> <u>also</u> <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was

1    contrary to or an unreasonable application of federal law under § 2254(d)(1)).

2                                    **DISCUSSION**

3    Denial of Motions to Substitute Counsel

4              Petitioner contends in his first claim of his amended petition filed September 10,

5    2003,  that the trial court erred in denying his verbal and written <u>Marsden</u> motions to remove

6    his appointed counsel without proper investigation of his claims and without properly

7    questioning counsel.  Petitioner claims that the trial court improperly heightened  the burden

8    in regard to the motions, so that Petitioner could not succeed on his motions.  Petitioner

9    concludes that he was thereby denied his right to due process, to a fair trial, and to effective

10   assistance of counsel.

11             The denial of a motion to substitute counsel implicates a defendant's Sixth

12   Amendment right to counsel.  <u>Bland v. California Dep't of Corrections</u>, 20 F.3d 1469, 1475

13   (9th Cir. 1994). Petitioner's claim that his <i>Marsden</i> motion was improperly denied is therefore

14   properly considered in this habeas proceeding.  In determining whether a motion to substitute

15   counsel was improperly denied, the court must consider three factors: "(1) the timeliness of

16   the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3)

17   whether the conflict between the defendant and his attorney was so great that it resulted in a

18   total lack of communication preventing an adequate defense." <u>Bland v. California Dep't of</u>

19   <u>Corrections</u>, 20 F.3d at 75 (citation omitted).

20             In addressing Petitioner's claim, the Court of Appeal explained as follows:

21             During the course of proceedings in superior court, Harrison had at least four
         different attorneys and submitted, orally or in writing, a minimum of 19 motions to
22       substitute appointed counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118
         (*Marsden*).  He now contends that two of these motions - one heard on May 22, 1991,
23       by Judge Gomes, and the other heard on October 5, 1994, by Judge O'Neill - were
         erroneously denied because the court failed to read the written motions and to inquire
24       of defense counsel.

25   Court of Appeal Opinion, 6.

26             The Court of Appeal reviewed the facts surrounding the two motions at length,

27

28                                          6

describing and explaining Petitioner's motions, the judges' inquiries and the ruling on each motion.  In regard to the motion before Judge Gomes to relieve attorney Thomas J. Richardson, the Court of Appeal specifically addressed and rejected, among other claims, Petitioner's claim that he was being denied access to his legal work, that Richardson failed to adequately investigate the case, that Richardson did not keep Petitioner informed about the case, and that Richardson did not adequately prepare.  The Court of Appeal also analyzed Petitioner's claim that Mr. Richardson was in collusion with the prosecutor.   This court has reviewed Petitioner's allegations at length, and finds that Petitioner has in no way demonstrated any error in the Court of Appeal's analysis.

In regard to the motion before Judge O'Neill to  relieve attorney Richardson, the Court of Appeal again reviewed the facts, noting at the outset that the judge continued the hearing on Petitioner's motion until the following morning so that he could read Petitioner's lengthy motion and attached exhibits. The Court of Appeal explained how Judge O'Neill addressed Petitioner's claims in detail, including those regarding admission of Petitioner's prior conviction, Richardson's communication with Petitioner, police pressure on the mother of one of the victims, and Petitioner's desire to act as co-counsel.  The Court of Appeal "categorically" rejected "any attempt" by Petitioner to "suggest that Judge O'Neill had not read the October 4 motion."   After thoroughly reviewing the facts, the Court of Appeal found that Judge O'Neill did not have a duty to ask about each and every allegation put forth by Petitioner, and that Judge O'Neill conducted an adequate inquiry.  It concluded that there was no error.

This court has reviewed Petitioner's claims and the Court of Appeal opinion at length.  As set forth above, the California Supreme Court denied Petitioner's petition for review.  Therefore, under Ylst v. Nunnemaker, this court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion.  After a carefully consideration,  this court finds that Petitioner has failed

7

to carry his burden of demonstrating that the California Supreme Court's adjudication of the claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). These claims therefore provide no basis for habeas corpus relief.

Petitioner's Pro Se Motions and Filings

Petitioner contends in his second claim of his amended petition that the trial court erred in declaring him to be a vexatious litigant because it resulted in the trial court ignoring several Marsden motions.  Petitioner presented this claim to the Court of Appeal on direct appeal, which reversed the trial court's vexatious litigant finding, but found that reversal of the conviction was not warranted because of a lack of prejudice.  Petitioner presented this claim in his petition for review to the California Supreme Court.

The Court of Appeal summarized the facts as follows:

> On June 19, 1992, Harrison was found to be incompetent in case Nos. 410784-3 and 433352-2, and conservatorship proceedings were instituted.  Harrison subsequently submitted a petition for writ of habeas corpus in case No. 410784-3, as well as a "DEMAND FOR HEARING on issues of Wel. Inst. Code 5008 and 5350." (*Sic*.)  On July 17, 1992, Judge Nunez issued the following order in case No. 410784-3, entitled "ORDER PROHIBITING FURTHER FILINGS IN PROPRIA PERSONA";
> "Having read and considered the numerous motions, petitions, and other documents submitted in propria persona by Carl Harrison plus relevant court documents on file in this and related matters, the court finds that the defendant is represented by an attorney of record, defendant's actions have been vexatious within the meaning of section 391 of the Code of Civil Procedure, and defendant currently is not qualified to represent himself.
>
> "IT IS THEREFORE ORDERED that the County Clerk shall not accept any further documents for filing submitted in propria persona by Carl Harrison unless leave has first been obtained from the Presiding Judge of this Court."
>
> The ordered was filed on July 20, 1992.  Insofar as the record shows, it was issued on the court's own motion, without prior notice to the parties or hearing.  Thereafter, Harrison continued to submit various documents and motions (including pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 [*Marsden*]), some of which took the form of letters written to specific judges, and others which were stamped "received" instead of "filed."  Some appear in the clerk's transcript on appeal without

8

any stamp, while others appear in the correct chronological order for the date placed on the motion by Harrison, but are file-stamped March 15, 1995, after he was sentenced. Harrison withdrew two *Marsden* motions, dated February 11 and March 6, 1994, on March 10, 1994, during his hearing on restored competence.

Court of Appeal Opinion, 21 - 22.

In addressing the issue of prejudice, the Court of Appeal held as follows:

> To the extent any *Marden* motions were not filed because of Judge Nunez's prefiling order, Harrison was not precluded from presenting these motions to the court. There is nothing in the record to indicate Harrison attempted to comply with the order's requirement that he obtain the presiding judge's permission to have the documents filed. More importantly, and regardless of whether the motions were not heard because they were not filed or because Harrison had been declared incompetent, we find no cause for reversal because of what took place in a hearing conducted by Judge O'Neill on July 18, 1994:

>> THE COURT: Listen to me, Mr. Harrison. If there is that issue, which you still wish to raise, just prepare your Marsden motion, send it to me, I will make sure it is in the file at the time of the hearing on these motions and it will be heard at the same time. [¶] . . . [¶]

>> THE COURT: All I am telling you, *if you want a Marsden hearing you send it to me, I'll make sure it is in the file. And on August 17th at the same time that all of your other motions are heard we will hear that one."*
>> (Italics added.)

> Harrison has not shown that any of his concerns with counsel were so pressing that he was prejudiced because they were not heard immediately, that he could not have resubmitted his motions prior to the August 17 hearing, [footnote omitted] or that he was unable to submit further complaints about counsel to Judge O'Neill. Some of his complaints, being exceedingly repetitious, were in fact ruled upon in later hearings. To the extent any earlier complaints were not heard, any error was cured by Harrison's failure to raise them at the hearings on his subsequent motions. (See *People v. Lloyd* (1992) 4 Cal.App.4th 724, 731-732.)

This court's review of the claim reveals that, as explained by the Court of Appeal, Petitioner has not shown that he was prejudiced by the trial court declaring him to be vexatious litigant. Petitioner has thus failed to carry his burden of demonstrating that the California Supreme Court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

9

1   State Court proceeding." 28 U.S.C. § 2254(d).  This claim therefore presents no basis for

2   habeas relief.

3   Ineffective Assistance of Counsel Re Competence

4        Petitioner contends in the third claim of his amended petition that trial counsel was

5   ineffective for failing to make a timely motion to dismiss based on competence.  Petitioner

6   relies on the fact that on June 19, 1992, the trial court found him to be incompetent, with no

7   substantial likelihood competence would be restored.  Petitioner claims that although trial

8   counsel made a motion to dismiss based on competence on December 8, 1993, it was not

9   timely because the trial court had found him to be competent in the interim.  Petitioner

10  presented this claim to the California Supreme Court in his petition for review.

11       The Court of Appeal explained the factual background as follows:

12       Harrison was found incompetent several times during the course of the
         proceedings.  On June 19, 1992, following a trial on the issue, Judge Quaschnick
13       issued written factual findings in which he found that Harrison suffered from
         Dissociative Disorder (Multiple Personality Disorder); had several separate and
14       distinct personalities, one of whom was afflicted with paranoid schizophrenia and was
         unwilling and unable to assist counsel in preparation for trial; had no control over the
15       personalities; and quickly switched from one to another, making him unable to assist
         counsel since one of the personalities was actively working against Richardson.
16       Judge Quaschnick found, by a preponderance of the evidence, that Harrison was
         incompetent; that there was no substantial likelihood competence would be restored
17       within the foreseeable future; and that the evidence established that competency
         would not be regained for at least 10 years and probably never.  Judge Quaschnick
18       further found, beyond a reasonable doubt, that Harrison was gravely disabled, had a
         dangerous mental condition, and represented a substantial danger.  Based on the
19       foregoing, Judge Quaschnick ordered Harrison deemed incompetent pursuant to
         section 1368-1370, found him gravely disabled within the meaning of Welfare and
20       Institutions Code section 5008, subdivision (h)(1)(B), and ordered initiation of
         conservatorship proceedings pursuant to Welfare and Institutions Code section 5350
21       et seq.

22       Judge Quaschnick subsequently referred the matter to the public guardian's
         office for investigation and report pursuant to Welfare and Institutions Code section
23       5008, subdivision (h)(1)(B), and continued the matter for hearing on a "Murphy"
         conservatorship.  On July 30, Judge Quaschnick committed Harrison to a secure,
24       long-term, locked mental facility operated by the State of California and ordered the
         public guardian to institute a "Murphy" conservatorship.
25       Harrison apparently was sent to Atascadero State Hospital, where he remained
         until August 1993.  On August 13, 1993, Harrison was back in court, the
26       conservatorship proceedings evidently having been withdrawn.  While the authorities
         at Atascadero claimed Harrison was competent, Richardson continued to assert that

27

28                                          10

1    he was not and never would be.  During the August 13 hearing before Judge Gomes,
2    Harrison argued that under *Jackson v. Indiana* (1972) 406 U.S. 715, he could no
     longer be prosecuted. [Footnote omitted.] Harrison reiterated this claim at the
3    continued hearing on August 20, 1993.
4            During the August 20 hearing, Richardson responded to Harrison's assertion
     that prosecution was barred by the so-called "three year rule" by requesting that a
     motions date be set.  The court assigned a date of September 22, 1993.  Various
5    continuances were had, and Richardson did not actually move to dismiss charge until
     December 8, 1993.

6    Court of Appeal Opinion, 29-31.

7            The law governing ineffective assistance of counsel claims is clearly established for

8    the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v.

9    Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging

10   ineffective assistance of counsel, the court must consider two factors.  Strickland v.

11   Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344,

12   346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient,

13   requiring a showing that counsel made errors so serious that he or she was not functioning as

14   the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The

15   petitioner must show that counsel's representation fell below an objective standard of

16   reasonableness, and must identify counsel's alleged acts or omissions that were not the result

17   of reasonable professional judgment considering the circumstances. Id. at 688; United States

18   v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's

19   performance is highly deferential.  A court indulges a strong presumption that counsel's

20   conduct falls within the wide range of reasonable professional assistance.  Strickland, 466

21   U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th

22   Cir.1994).

23           Second, the petitioner must demonstrate that "there is a reasonable probability that,

24   but for counsel's unprofessional errors, the result ... would have been different," 466 U.S., at

25   694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a

26   fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must evaluate

27

28                                            11

1   whether the entire trial was fundamentally unfair or unreliable because of counsel's

2   ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d

3   1356, 1461 (9th Cir. 1994).

4        A court need not determine whether counsel's performance was deficient before

5   examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

6   Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since the defendant must

7   affirmatively prove prejudice, any deficiency that does not result in prejudice must

8   necessarily fail. However, there are certain instances which are legally presumed to result in

9   prejudice, e.g., where there has been an actual or constructive denial of the assistance of

10  counsel or where the State has interfered with counsel's assistance.  See Strickland, 466 U.S.

11  at 692; United States v. Cronic, 466 U.S., at 659, and n. 25, 104 S.Ct., at 2046-2047, and n.

12  25 (1984).

13       Ineffective assistance of counsel claims are analyzed under the "unreasonable

14  application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215

15  F.3d 1058, 1062 (2000).  "Under the 'unreasonable application' clause, a federal habeas court

16  may grant the writ if the state court identifies the correct governing legal principle from

17  [United States Supreme Court] decisions but unreasonably applies that principle to the facts

18  of the prisoner's case."  Williams, 529 U.S. at 413.  The habeas corpus applicant bears the

19  burden to show that the state court applied United States Supreme Court precedent in an

20  objectively unreasonable manner.  Price v. Vincent, 538 U.S. 634, 640 (2003).

21       The Court of Appeal explained Petitioner's contention as follows:

22          Harrison now contends Richardson's performance was deficient, since it is
        reasonably probable a motion to dismiss would have been granted had it been brought
23      shortly after Judge Quaschnick issued his findings.  Had the motion been successful,
        Harrison claims, he would have continued as a conservatee solely pursuant to Welfare
24      and Institutions Code section 5008.  He seeks reversal of the judgment so that
        conservatorship proceedings can be ]initiated. [Footnote omitted.]
25
26  Court of Appeal Opinion, 31.

27       In addressing Petitioner's contention, the Court of Appeal recognized the applicable

28                                        12

Srickland standard and then analyzed California law on competency under In re Davis, 8 Cal.3d 798 (1973).  The Court of Appeal found that under the circumstances of representing a client who "seemingly cycled in and out of competence," counsel could have reasonably believed that a motion to dismiss brought in 1992 would not have had a very good chance of succeeding.  Court of Appeal Opinion, 37. The Court of Appeal concluded, therefore, that Petitioner had failed to establish that counsel's performance was defective.  Id. at 38.

The Court of Appeal further found that Petitioner had failed to establish prejudice, because based on the history of the case, it was not likely that the request to dismiss, if made, would have been granted.  It also found no reasonable likelihood that events that had a request for dismissal been granted, events would have played out differently, rejecting Petitioner's speculation that Atascadero would not have returned him to court, but instead he would have continued as a conservatee.  Court of Appeal Opinion at 38.

This court's review of the claim reveals that, as explained by the Court of Appeal, Petitioner has not shown that he was prejudiced by trial counsel failing to make an earlier motion to dismiss based on competence.  In particular, this court must agree with the Court of Appeal's ultimate conclusion that had a request for dismissal been granted, there is no evidence that Atascadero would not have returned Petitioner to court.  Petitioner has thus failed to carry his burden of demonstrating that the California Supreme Court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  This claim therefore presents no basis for habeas relief.

Denial of Motion to Dismiss

Petitioner contends in the fourth claim of his amended petition that the trial court erred in denying his December 1993 motion to dismiss.  He claims that both state and federal

law mandated dismissal.  Petitioner presented this claim to the California Supreme Court in his petition for review.

The Court of Appeal discussed this claim at length, recognizing at the outset that the trial court made a finding that it was not reasonably likely that Petitioner's competence would be restored in the foreseeable future.  Court of Appeal Opinion, at 39.  The Court of Appeal noted that both California and federal law prohibit indefinite commitments without trial, but found that neither automatically mandated immediate dismissal of criminal charges under the conditions in this case.  Id. at 42.  It concluded  that it could not say that the three years of confinement authorized under California law were unreasonable when applied to Petitioner's circumstances,  Id.

The Court of Appeal further concluded that even if the three-year limitation was exceeded in Petitioner's case, reversal of the criminal conviction was not required.  It found that neither federal nor state law necessarily entitled a defendant to dismissal of criminal charges once the three-year period is reached. Court of Appeal Opinion, 43-44.  Further, it found that Petitioner was not entitled to reversal without a showing of prejudice, a showing which he could not make.   The Court of Appeal concluded as follows:

> Harrison was found competent to stand trial, and he then underwent a jury trial in which he was convicted of criminal charges.  We do not see how this outcome would have changed.  If conservatorship proceedings had been instituted, Harrison still would  have been found restored to competency and subsequently would have been tried and convicted.  (See § 1372, subd. (b).)  Had criminal charges been dismissed, the dismissal would not have acted as a bar to further prosecution.  (See § 1387.)  The record does not suggest any occurrence that even remotely might have changed the course of the proceedings, either with regard to the judicial determination that Harrison was competent to stand trial, or with respect to that trial itself.

Court of Appeal Opinion, 46.

In light of the unavoidable logic of this analysis, this court finds that Petitioner has failed to carry his burden of demonstrating that the California Supreme Court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

14

1   United States;" or "resulted in a decision that was based on an unreasonable determination of

2   the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

3   § 2254(d). This claim therefore presents no basis for habeas relief.

4   Burden of Proof re Competency to Stand Trial

5       Petitioner contends in the fifth claim of his amended petition that the trial court erred

6   in placing on him the burden of proof to show, by a preponderance, that he was incompetent

7   to stand trial. Petitioner presented this claim to the California Supreme Court in his petition

8   for review. The Court of Appeal explained the factual background as follows:

> A hearing on the restoration issue (§ 1372) began on March 7, 1994, before Judge
> Kane, and concluded on March 14. [Footnote omitted.] By written ruling, Judge Kane
> found Harrison competent to stand trial. In so doing, Judge Kane applied the
> presumption contained in section 1369, subdivision (f) ["It shall be presumed that the
> defendant is mentally competent unless proved by a preponderance of the evidence
> that the defendant is mentally incompetent"]. Factually, Judge Kane found that
> Harrison understood the nature of the criminal proceedings, and that he was able to
> assist in his defense, although whether he would choose to cooperate with defense
> counsel was uncertain.

14  Court of Appeal Opinion, 46.

15      The Court of Appeal rejected Petitioner's due process claim for two reasons. First, it

16  found that "Judge Kane found the evidence itself established that Harrison was competent,

17  irrespective of any presumption or allocation of burden of proof." Id. at 47. Second, the

18  Court of Appeal found Petitioner's argument foreclosed by the decisions People v. Medina,

19  505 U.S. 437, 452-453 (1992)(upholding the California Supreme Court's ruling that section

20  1369 does not violate the due process clause of the federal Constitution) and People v. Rells,

21  22 Cal.4th 860, 862 (2000)(holding that the application of the presumption under section

22  1369 does not violate the due process clause).

23      This court finds that, as Respondent argues, this claim is foreclosed by the Supreme

24  Court's decision in People v. Medina. In Medina, the Court held that it was permissible for

25  California to place on a criminal defendant the burden of proving that he is mentally

26  incompetent and to require a him to make the showing by a preponderance of the evidence.

27

28                                           15

1    Id. at 446 - 452.  This court therefore finds that Petitioner has failed to carry his burden of

2    demonstrating that the California Supreme Court's adjudication of the claim "resulted in a

3    decision that was contrary to, or involved an unreasonable application of, clearly established

4    Federal law, as determined by the Supreme Court of the United States;" or "resulted in a

5    decision that was based on an unreasonable determination of the facts in light of the evidence

6    presented in the State Court proceeding." 28 U.S.C. § 2254(d).  This claim present no basis

7    for habeas corpus relief.

8    Ineffective Assistance of Counsel During Restored Competency Hearings

9         Petitioner contends in the sixth claim of his amended petition that his trial counsel

10   provided ineffective assistance of counsel during the restored competency hearing.  Petitioner

11   claims his counsel (1) should not have conceded there was no right to jury trial on the issue

12   of competency; (2) should have asked Judge Kane to take judicial notice of the Judge

13   Quashnick's 1992 findings; and (3) failed to attack the state hospital's findings that he was

14   competent.   Petitioner presented the first two arguments to the Court of Appeal on direct

15   appeal and to the California Supreme Court in his petition for review.  Petitioner presented

16   the third argument to the California Supreme Court in his petition for writ of habeas corpus.

17        The Court of Appeal rejected Petitioner's claim regarding a jury trial on the issue of

18   competence, finding that existing authority at the time directly held that a defendant had no

19   such right.  See People v. Murrell, 196 Cal.App.3d 822 (1987).  Thus, the court found that

20   trial counsel had acted in accordance with the law as it stood at the time of the hearing before

21   Judge Kane.  The Court of Appeal expressly declined to reach the issue of whether a

22   defendant had a statutory right to jury trial on the issue of restored competence at the time it

23   issued its opinion.  This court finds that Petitioner can demonstrate no deficiency in the Court

24   of Appeal's analysis.

25        In regard to judicial notice, the Court of Appeal found that trial counsel had discussed

26   Judge Quaschnick's 1992 findings in his argument before Judge Kane.  Further, Judge Kane

27

28                                              16

recited Judge Quaschnick's 1992 in his written ruling.  The Court of Appeal found that this clearly demonstrated Judge Kane's awareness of the fact those earlier rulings were made and the contents of those rulings.   It concluded that a request for judicial notice would have accomplished nothing more.  This court agrees.

Finally, Petitioner argues that trial counsel was ineffective for failing to attack the validity of the state hospital's finding Petitioner was competent.   His argument addresses whether the state had the authority under California law to find him incompetent. As Respondent argues, because the trial court focused on whether Petitioner actually was competent, the legality of the state hospital's finding is irrelevant.  It was the trial court's finding, not the state hospital's finding, that resulted in Petitioner eventually being found guilty.  This court finds that Petitioner has demonstrated no deficiency in trial counsel's decision not to challenge the findings of the state hospital.

The court concludes that Petitioner has failed to carry his burden of demonstrating that the California Supreme Court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  This claim thus presents no basis for habeas relief.

Trial Court's Failure to Refer Petitioner for Further Competency Hearings    Pet. 1 at 94-106

Petitioner contends in the seventh claim of his amended petition that the trial court erred in failing to refer him for further competency hearings based on his bizarre behavior. Specifically, Petitioner claims that Judge O'Neill erroneously failed to suspend criminal proceedings and refer him for a further section 1368 evaluation in August 1994.

Generally, a person whose "mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and

to assist in preparing his defense may not be subjected to a trial." <u>Drops v. Missouri</u>, 420 U.S. 162, 172 (1975).  The test for competency to stand trial is whether the defendants "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him." <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960).  An evidentiary hearing is constitutionally compelled at any time that there is substantial evidence that the defendants may be mentally incompetent to stand trial.  <u>DeKaplany v. Enmoto</u>, 540 F.2d 975, 980-81 (9th Cir. 1976).  "Evidence is substantial if it raises a reasonable doubt about the defendant's competency to stand trial." <u>Id.</u> at 981.  However, the function of the trial court is not to determine if the defendant is competent to stand trial, but to decide whether "there is any evidence which, assuming its truth, raises a reasonable doubt about the defendant's competency" and to order an evidentiary hearing on the competency issue if such evidence appears. <u>Id.</u> at 981.

As discussed above, Judge Kane found Petitioner restored to competence on March 16, 1994, and criminal proceedings were reinstated on April 6.  On July 25, Petitioner filed a <u>Marsden</u> motion alleging in part that trial counsel was a spy from the KGB and might be a Republican from another planet.   On August 4, Petitioner submitted a <u>Marsden</u> letter to Judge O'Neill in which he claimed trial counsel was a liar.  Judge O'Neill heard the motion on August 17.

On August 18, 1994, at a case status hearing before Judge Gomes, trial counsel advised the court that he had doubts concerning Petitioner's competence, and that at the conclusion of the <u>Marsden</u> hearing, Judge O'Neill had suggested this as an appropriate course of action.  The matter was heard by Judge O'Neill on August 19.

The Court of Appeal explains Judge O'Neill's ruling as follows:

Citing *People v. Kelly* (1992) 1 Cal.4th 495, Judge O'Neill determined that, because a competence hearing already had been held, the focus now was on whether the court had been presented with a substantial change of circumstances or with new evidence which cast serious doubt on the validity of Judge Kane's findings.  Judge O'Neill

18

continued:

> "I found Mr. Glickman to be a very credible witness.  I don't in any way dispute what you are saying based on your view of it, Mr. Richardson, but neither one of those is the real issue.

> "The real issue is whether or not the testimony is or is not consistent with Judge Kane's findings.  If you look at the findings, specifically at page six of the opinion, Judge Kane after hearing the evidence, both factual and hearing argument of Counsel from a legal standpoint, indicates 'that the Defendant,' as Judge Kane puts it, 'picks and chooses the times which he wishes to be cooperative,' end of quote.  And then Judge Kane finds that, quote, 'the Defendant is a malingerer and a pathological lier [*sic*[,' end of quote.  That to me the only interference I can draw from that is that Judge Kane found that this Defendant is a smart, manipulative lier [*sic*] who cooperates when it is to his advantage to cooperate.

> "Therefore, the real issue here is whether or not he is a good actor.  Whether or not he is putting on a good act for you.  Whether or not he is putting on a good act for Mr. Glickman.  Mr. Glickman was obviously quite truthful in his statement [that Harrison] could be putting on an act.  He also said he didn't think so.  But the fact of the matter is, Judge Kane thinks that's exactly what he was doing based on a full hearing, and there's nothing inconsistent from what I have heard with that finding.  It sounds like based on what Judge Kane is saying he is still putting on a pretty good act.

> "And in looking at the law and *People v. Kelly* nothing I've heard addresses the reasons Judge Kane found how he found based on his opinion.  Therefore, the Court does not find there's reason to allow another competency hearing.  I have not heard any evidence before me that casts a serious doubt on the validity of Judge Kane's finding.

> Harrison now contends that, because the findings of Judge Quaschnick and Judge Kane were so diametrically opposed, meaningful application of the "changed circumstances" test employed by Judge O'Neill was impossible because Harrison's circumstances would never be deemed to have changed from those found by Judge Kane.  As Harrison puts it, "no degree of 'decompensation' could ever constitute 'changed circumstances,' if the trial court's fundamental premise was that Mr. Harrison was feigning mental illness."  Because of this, the argument runs, Judge O'Neill was required to form his own subjective opinion on the question of doubt as to competence.  Under the "unique circumstances" of this case, Harrison concludes, Judge O'Neill failed to recognize his full duty to reach an individualized, subjective opinion, despite strong evidence of decompensation.

Court of Appeal Opinion, 58-59.

The Court of Appeal discussed the controlling California law on the issue, and concluded that ""Judge O'Neill was "'not presented with a substantial change of circumstances or with new evidence' casting a serious doubt on the validity of " Judge Kane's finding of competence. (*People v. Jones,* [(1991) 53 Cal.3d 1115, 1153].""" Court of

19

Appeal Opinion, 60.  The Court of Appeal therefore rejected the claim that Judge O'Neill had

erred in finding Petitioner to be competent under the rule expressed in the controlling law.

The Court of Appeal further rejected Petitioner's argument that it should depart from that

rule, finding that, "[h]ad something new been presented, changed circumstances would have

existed, and nothing suggests Judge O'Neill would not have so found." Id. at 61. The Court

of Appeal therefore concluded there was no error.

In this case, Petitioner had multiple competency hearings.  In regard to this claim,

Judge O'Neill heard evidence, including testimony, with regard to why Petitioner sought a

new competency hearing.  Judge O'Neill found that Petitioner was "putting on a pretty good

act" and that a renewed competency hearing was not necessary.  The Court of Appeal

subsequently determined there was no error in Judge O'Neill's decision there was no reason

to conduct another competency hearing.  As Respondent argues, no process requires no more

than Petitioner received.  This court thus concludes that Petitioner has failed to carry his

burden of demonstrating that the California Supreme Courtl's adjudication of the claim

"resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States;" or

"resulted in a decision that was based on an unreasonable determination of the facts in light

of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). Accordingly,

this court finds this claim provides no basis for habeas corpus relief.

Motion to Disqualify Judge O'Neill

Petitioner contends in the eighth claim of his amended petition that the trial court

erred in denying his motion to disqualify Judge O'Neill and that his trial counsel was

ineffective for failing to raise the issue by way of a writ.  Petitioner presented this claim to

the California Supreme Court in his petition for review.

The Court of Appeal explained as follows:

At some point prior to September 21, 1994, Petitioner personally filed a
motion to disqualify Judge O'Neill for cause (Code Civ. Proc., § 170.1).  Apparently

20

by checking boxes on a form, Petitioner alleged that "Judge O'Neill had personal knowledge of disputed evidentiary facts, was related to a material witness in the case, served as a lawyer in the case, gave legal advice to a party in the case, associated with the prosecutor on a social basis, was biased as to the outcome of the proceedings, was a party to the proceedings, could not be impartial, was involved in a political controversy with counsel or a party to the proceedings, and participated in a conspiracy against a party or counsel."  Harrison added that Judge O'Neill was "under investigation for raping Carl F. Harrison at the County Jail involved in a conspiracy to rape and drug inmates."  (*Sic.I*) Judge O'Neill filed a sworn declaration in which he denied every allegation.  Judge Schultz of the Kings County Superior Court, who was assigned to hear the matter, concluded that Harrison's "indiscriminate allegations of prejudice" were "wholly unsupported by any indicia of credibility." Accordingly, on September 30, he denied the motion for disqualification.

Court of Appeal Opinion, 61-62.

As Respondent states, a petitioner may not raise errors of state law, such as a motion to disqualify a California state judge under Cal. Code Civ. Pro. § 170, on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  The court will therefore, as Respondent suggests, construe this claim as one of unconstitutional judicial bias.  See Withrow v. Lakin, 421 U.S. 35, 46 -47 (1975) ("Concededly, a 'fair trial in a fair tribunal is a basic requirement of due process.' In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955).").

This court finds that Respondent is correct in arguing that Petitioner points to no evidence which indicates judicial bias.  Therefore, the court concludes that Petitioner has failed to meet his burden of demonstrating that  the adjudication of this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

In regard to Petitioner's claim that counsel was ineffective for failing to raise the issue by way of a writ, the Court of Appeal explained:

Code of Civil Procedure section 170.3 sets out the procedures to be followed when a judge determines him- or herself to be disqualified or fails or refuses to recuse him-or herself.  Subdivision (d) of the statute provides:

21

> "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision and only by the parties to the proceeding.

> Harrison recognizes that no writ review was sought of Judge O'Neill's ruling. He says that this requirement does not apply in the case at bench, however, because there was no "determination of the question" of disqualification. Instead, Judge O'Neill struck Richardson's declaration pursuant to Code of Civil Procedure, section 170.4, subdivision(c)(3). Hence, Harrison concludes, the ruling may be challenged on appeal.

Court of Appeal Opinion, 64.

The Court of Appeal rejected Petitioner's argument, finding that Judge O'Neill's ruling was not appealable, noting that Section 170.3(d) of the Code of Civil Procedure applies "to any motion to disqualify a judge, whether the challenge is peremptory or 'for cause.'" Guedalia v. Superior Court, 211 Cal.App.3d 1156, 1160 (1989). It reviewed both the purpose of the rule, as expressed in the statute, and the public policy concerns which prompted its enactment. In light of its analysis, the Court of Appeal concluded that Judge O'Neill's ruling "could only be reviewed by writ of mandate, in accord with Code of Civil Procedure section 170.3(d)." Court of Appeal Opinion, 66. Finally, the Court of Appeal rejected the claim that trial counsel rendered ineffective assistance of counsel by failing to seek review by writ of mandate, finding in particular that writ relief would not have been granted if it had been sought.

A determination of state law by a state appellate court is binding in a federal habeas action, Hicks v. Feiock, 485 U.S. 624, 629 (1988), unless the interpretation is an "obvious subterfuge to evade consideration of a federal issue." Mullaney v. Wilbur, 421 U.S. 684, 691 n. 11 (1975). Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (federal habeas court must respect a state court's application of its own law and must not engage in de novo review).

This court finds that Petitioner has presented nothing demonstrating that the Court of Appeal's finding that writ relief would not have been granted if it had been sought "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States;" or

"resulted in a decision that was based on an unreasonable determination of the facts in light

of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). This claim

therefore provides no basis for habeas relief.

Denial of Peremptory Challenges

In the ninth claim for relief in his amended petition, Petitioner contends that the trial

court erred in denying his motion to allow the parties additional peremptory challenges,

arguing that this violated his right to equal protection. Petitioner argues specifically that the

length of his sentence is comparable to those for murder, and defendants charged with murder

are entitled under California law to more peremptory challenges than he received. Petitioner

presented this contention to the California Supreme Court in his petition for review.

In addressing this claim, the Court of Appeal explained the facts as follows:

> At the outset of trial, Harrison moved, in limine, for additional peremptory
> challenges so that he and the People would each have 20. [Footnote omitted.] He
> asserted that, due to the nature of the case, it would be difficult to find 12 people
> would could be fair, and a defendant faced with a life sentence is entitled to 20
> peremptory challenges. Judge O'Neill denied the motion, finding that the matter was
> governed by Code of Civil Procedure section 231 and noting that the parties were
> afforded unlimited challenges for cause.[2]  After the jury and the alternates were
> sworn, Richardson was allowed to place on the record his objection to the court's
> refusal to give him additional challenges.

Court of Appeal Opinion, 70.

The Equal Protection Clause requires that persons who are similarly situated be

treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).

An equal protection claim may be established in two ways. First, a plaintiff establishes an

equal protection claim by showing that the defendant has intentionally discriminated on the

---

[2]Code of Civil Procedure section 231(a) provides in part:
> In criminal cases, if the offense charged is punishable with death, or with
> imprisonment in the state prison for life, the defendant is entitled to 20 and the
> people to 20 peremptory challenges.   Except as [not pertinent here], in a trial for
> any other offense, the defendant is entitled to 10 and the state to 10 peremptory
> challenges.

basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001).  Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race.   Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that:  (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564.   If an equal protection claim is based upon the defendant's selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement is based upon an "impermissible motive." Squaw Valley,  375 F.3d at 944; Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir.1995).

In this case, Petitioner does not claim that he is a member of a suspect class, but rather makes an argument that he was treated differently from similarly situated individuals. The Court of Appeal rejected this argument, finding that, "a defendant sentenced to a determinate term is not similarly situated with murderers who receive indeterminate life sentences."  Court of Appeal Opinion, 71.  The Court of Appeal therefore concluded that Petitioner failed to state an equal protection claim.  In addition, the Court of Appeal found that even if he were similarly situated, there is a rational basis for allocating greater resources to a person charged with a single serious crime than to a defendant charged with multiple crimes for which the aggregate punishment is as great.  Id. at 74.

The court has carefully reviewed Petitioner's arguments and finds that he has provided nothing to show that the  California Supreme Court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  In particular, Petitioner provides nothing to meaningfully challenge the state court conclusion  that a defendant sentenced to a determinate term is not similarly situated with murderers who receive indeterminate life sentences.  This contention therefore presents no basis for habeas relief.

Exclusion of Expert Testimony

Petitioner claims in the tenth claim of his amended petition that the trial court erroneously excluded evidence in the form of expert testimony regarding the investigative techniques used to gather information from Petitioner's child victims.   Arguing that the expert testimony would have tended to show that the child victims' testimony might not have been credible, Petitioner claims that the exclusion of this evidence denied him the right to present a meaningful defense.  Petitioner presented this claim to the California Supreme Court in this petition for review.

In addressing this claim, the Court of Appeal explained the facts as follows:

> After extensive argument, Judge O'Neill asked defense counsel, "But it would either be psychiatric or psychological testimony [the defense experts] are going to come in, and you can't give me the specifics as to what they will say or the basis as far as their studies are concerned, but your position is that they would come in and they would be discussing the issue of credibility of the children with regard to what they might be influenced to say?"  Richardson responded that he intended to have an expert testify concerning the fallacies of the type of interviews done in this case, just as the expert in *People v. McDonald* (1984) 37 Cal.3d 351 (overruled on other grounds in *People v. Mendoza* (2000) 23 Cal.4th 896, 914) sought to testify concerning the fallacies of eyewitness identification.  Richardson wanted to have his expert testify about different factors which jurors could use to evaluate the children's testimony, and he reiterated that he would not ask questions about the expert's opinion as to any child's truthfulness.  Nevertheless, the prosecutor warned that if the defense attacked the credibility of the children with expert psychiatric testimony, the prosecution would

"put doctor after doctor" and present evidence of Child Sexual Abuse Accommodation Syndrome.

Court of Appeal Opinion, 77.   The Court of Appeal explained that Judge O'Neill determined that a foundational hearing was not necessary, and found that there was a judicial policy against attempting to impeach witnesses by means of psychiatric testimony.  He also weighed the probative value against the probability of undue consumption of time, and confusing the issues and misleading the jury.  After considering both factual and legal issues, Judge O'Neill granted the motion to exclude this evidence.

The Court of Appeal explained further:

> Richardson subsequently was permitted to ask prospective jurors whether they believed children always told the truth and whether, depending on how a child was questioned, he or she could be led to say virtually whatever the questioner wanted. He was also permitted to broach the subject in his opening statement.  He was allowed to examine the district attorney's investigator, Weldon Griffith, at length about investigative techniques and Griffith's questioning of the children in this case, and to read extensive portions of transcripts of the children's interviews. [Footnote omitted.] He was allowed to question other witnesses, such a medical personnel, concerning the propriety of certain investigation techniques, and to examine Anna G., who maintained she had not been molested by Harrison, concerning the manner in which Weldon Griffin questioned her, and to impeach her testimony in this regard through a defense investigator who also interviewed her.  Finally, he was permitted to argue to the jury, based on his view of the evidence admitted at trial, that the children's allegations were the product of suggestive questioning and other improper investigative techniques.

Court of Appeal Opinion, 78-79.

> "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." United States v. Scheffer, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) ; [additional citations omitted].   This latitude, however, has limits. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " Crane, [476 U.S. 683] at 690, 106 S.Ct. 2142 (quoting California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); citations omitted). This right is abridged by evidence rules that "infring[e] upon a weighty interest of the accused" and are " 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' "Scheffer, supra, at 308, 118 S.Ct. 1261 (quoting Rock v. Arkansas, 483 U.S. 44, 58, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)).

Holmes v. South Carolina, 547 U.S. 319, 324-25 (2006).

In this case, the Court of Appeal found that although restrictions short of complete exclusion could constitute a violation of the federal Constitution, Judge O'Neill's ruling excluding the expert testimony did not rise to such a level because it did not deprive Petitioner of a meaningful opportunity to present a complete defense. Petitioner cannot show otherwise, as set forth in the language of the Court of Appeal quoted above, itemizing the various ways in which Petitioner was allowed to make his argument to the jury. Nothing in Petitioner's arguments demonstrates that this finding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). Accordingly, the court finds that this claim presents no basis for habeas corpus relief.

Exclusion of Expert Evidence as Violative of California Law

In a claim related to his tenth claim, Petitioner claims in the eleventh claim in his amended petition that the trial court's denial of his request to allow expert testimony violated California constitutional and statutory law. Petitioner presented this claim to the California Supreme Court in a petition for writ of habeas corpus, which the court denied.

As Respondent correctly argues, to the extent that Petitioner claims he has a federal Constitutional right to the excluded testimony separate from the rights address in claim ten above, he is mistaken. Federal habeas corpus relief is not available to correct alleged errors in the state court's application or interpretation of state law. Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991); Middleton v. Cupp, 768 F.2d 1083, 1084-85 (9th Cir.1985). Accordingly, this claim presents no basis for habeas relief.

Various Evidentiary Rulings

Petitioner claims in the twelfth claim of his amended petition that the trial court made various evidentiary rulings that combined to deprive him of his due process rights. Petitioner

1    presented this claim to the California Supreme Court in his petition for review.

2         The Court of Appeal found that although Petitioner's claims were not entirely clear it

3    appeared that Petitioner was challenging "Judge O'Neill's exclusion of evidence concerning

4    alleged physical or sexual abuse of, or sexual conduct by, any minor witnesses which

5    occurred after the initial report of abuse." Court of Appeal Opinion, 88. The Court of

6    Appeal explained: "[t]he defense sought admission of the evidence to attack the credibility of

7    various witness  (including that of the children by showing their sexual knowledge came

8    from sources other than Harrison); and to show the children had a motive to fabricate

9    allegations against Harrison, either because they were transferring to him their abuse by other

10   people or because in return for the allegations, they received the love and affection that was

11   otherwise missing from their lives." Court of Appeal Opinion, 93.

12        While the Constitution thus prohibits the exclusion of defense evidence under
     rules that serve no legitimate purpose or that are disproportionate to the ends that they
13   are asserted to promote, well-established rules of evidence permit trial judges to
     exclude evidence if its probative value is outweighed by certain other factors such as
14   unfair prejudice, confusion of the issues, or potential to mislead the jury. See, e.g.,
     Fed. Rule Evid. 403; Uniform Rule of Evid. 45 (1953); ALI, Model Code of Evidence
15   Rule 303 (1942); 3 J. Wigmore, Evidence §§ 1863, 1904 (1904). Plainly referring to
     rules of this type, we have stated that the Constitution permits judges "to exclude
16   evidence that is 'repetitive ..., only marginally relevant' or poses an undue risk of
     'harassment, prejudice, [or] confusion of the issues.' " Crane, supra, at 689-690, 106
17   S.Ct. 2142 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 89
     L.Ed.2d 674 (1986); ellipsis and brackets in original). See also  Montana v. Egelhoff,
18   518 U.S. 37, 42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (plurality opinion) (terming
     such rules "familiar and unquestionably constitutional").
19

20   Homes v. South Carolina, 547 U.S. 319, 326 -27 (2006).

21        As is discussed by the Court of Appeal in its opinion, the trial court excluded the

22   evidence on the ground that the information was irrelevant, or the ground that the probative

23   value did not outweigh the prejudicial effect the admission of the evidence would have on the

24   trial. Court of Appeal Opinion, 89-93. As Respondent argues, the record demonstrates that

25   the trial court tailored its many rulings to allow Petitioner to present a meaningful defense,

26   allowing Petitioner to impeach the witnesses' motivation for accusing Petitioner of

27

28                                              28

molestation, although requiring him to do so in a much more focused way than he had requested.  The trial court also allowed limited questioning regarding the minor victims' prior sexual knowledge.

The Court of Appeal reviewed Judge O'Neill's rulings on admission of this evidence, discussed the applicable federal and state law at length, and found no error in the rulings.  It therefore concluded that there was no cause for reversal, based on either a single ruling or on cumulative error.   Court of Appeal Opinion, 88-101.   Petitioner has presented nothing which shows that this finding, adopted by the California Supreme Court,  "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).   Instead, Petitioner simply restates his arguments made before the trial court.  This court finds, therefore, that this claim presents no basis for habeas corpus relief.

Inquiry into Juror Misconduct

Petitioner claims in the thirteenth claim of his amended petition that the trial court erred in failing to adequately inquire into instances of possible juror misconduct as a basis for which a juror was subject to discharge.  Petitioner presented this claim to the California Supreme Court in his petition for review.

"In all criminal prosecutions," state and federal, "the accused shall enjoy the right to . . . trial  . . . by an impartial jury," U.S. Const., Amends. 6 and 14; see Duncan v. Louisiana, 391 U.S. 145 (1968).  In reviewing a claim of juror misconduct, "[t]he test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." United States v. Klee, 494 F.2d 394, 396 (9th Cir.), cert. denied, 419 U.S. 835 (1974). Although it is generally preferred that a trial court hold an evidentiary hearing when allegations of juror misconduct arise, it is not always required, particularly when the court

knows the exact scope and nature of the misconduct.  See United States v. Halbert, 712 F.2d

388, 389 (9th Cir.1983); United States v. Hendrix, 549 F.2d 1225, 1227 (9th Cir.1977); see

also United States v. McVeigh, 153 F.3d 1166, 1187 (10th Cir.1998), cert. denied, 119 S.Ct.

1148 (1999).  The Court is mindful of the fact that "it is virtually impossible to shield jurors

from every contact or influence that might theoretically affect their vote." Rushen v. Spain,

464 U.S. 114, 118 (1983), quoting Smith v. Phillips, 455 U.S. 209, 217 (1982).   "Due

process means a jury capable and willing to decide the case solely on the evidence before it,

and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect

of such occurrences when they happen."  Smith v. Phillips, 455 U.S. at 217, n.7.  A defendant

must prove actual bias on the part of a juror.  Id. at 214.

The Court of Appeal explained the facts as follows:

> At the start of the afternoon session on October 13, 1994, which was in the midst of Tony R.'s testimony, Richardson informed Judge O'Neill that, as the jury was in leaving for lunch, Harrison overheard several of the jurors talking to each other and saying, "poor little guy."  Richard asked that the jury be readmonished not to discuss the merits of the case until all of the evidence had been presented.  Judge O'Neill agreed to do so, although he denied Harrison's motion for a mistrial.  At the next recess, Judge O'Neill reminded jurors that it was very important that they not discuss any aspect of the case or form any opinion.  When the court recessed for the evening, he admonished them not to discuss the case with anyone, and that they could not make comments or discuss the case in any way even among themselves.  The next day, Judge O'Neill reiterated that jurors were not to discuss the case or make comments to each other, and he reminded them that they had not yet heard all of the evidence.

> On October 17, Richardson informed the court that he had just been told by his investigator that the investigator and Harrison recognized Juror Number Five as having been a nurse at APU at on point when Harrison was there.  As a result, defense counsel requested that the juror be removed and an alternate seated.  Judge O'Neill noted that all jurors had been asked whether they recognized Harrison or any of the attorneys, and the juror in question did not respond.  Judge O'Neill inferred from the lack of response that the juror did not recall Harrison, a situation the judge did not find surprising given the high volume of patients at APU.  Accordingly, he found no reason to believe the juror knew or remembered Harrison unless she brought it to the court's attention.

> Richardson then represented that Harrison had just informed him that Harrison had filed lawsuits against APU and this juror for taking away his legal materials.  Judge O'Neill responded that he needed to see a copy of the pleading, which Richardson agreed to obtain from the attorney handling that case.  When Judge O'Neill asked whether the juror was named as a defendant in the lawsuit, Harrison

30

personally responded that she was going to be named, as she was one of the Doe defendants. Judge O'Neill stated that was "not good enough," then warned against naming the juror in order to get rid of her. Judge O'Neill then examined a civil lawsuit which was contained in the record before him and satisfied himself that it did not pertain to Juror Number Five. Insofar as the record shows, the other civil suit was not presented to the judge.

On October 24, Harrison submitted a *Marsden* motion which in part concerned Juror Number Five. Notably, Harrison's allegations concerning the juror were somewhat different than those presented in court. Harrison claimed he had informed Richardson that he had been watching the juror, who was prejudiced against Harrison due to a civil suit he had filed against the juror's employer. Harrison represented that the juror kept staring at him, and, after one of the children testified, said "poor little boy" as she was leaving the courtroom. Harrison represented that the juror stated she worked at Valley Medical Center, but she was not revealing all of the facts because in reality she worked at APU. Harrison claimed that he had filed a complaint against almost every friend of the juror and a civil suit against the mental facility at which she worked. Harrison stated that she had a strong motive to dislike him, had failed to tell the court that she knew him, and kept giving him vengeful looks. Judge O'Neill noted the issue had already been raised and ruled upon.

Harrsion now contends he is entitled to reversal of the judgment and a limited remand in order to determine whether there was prejudicial jury misconduct or whether, even absent misconduct, good cause existed to discharge any juror.

Court of Appeal Opinion, 101- 103.

The Court of Appeal noted initially that under California law, the decision whether to investigate the possibility of juror bias was a discretionary matter with the trial court. See People v. Bradford, 15 Cal.4th 1229, 1348 (1997). Further, under Bradford, "[a] hearing is required only where the court possesses information which, if proven to be true, would constitute 'good cause' to doubt a juror's ability to perform his or her duties and would justify his or her removal from the case." Id. at 1348. With respect to the "poor little guy" comment, the Court of Appeal found that, "[n]othing in the record suggests Judge O'Neill possessed information which, if true, would have constituted good cause to doubt a juror's ability to perform his or her duties; hence, Judge O'Neill was under no duty to inquire. [Citation omitted.] This conclusion is bolstered by the fact defense counsel did not request a hearing, but simply make [sic] a perfunctory motion for mistrial and asked that the jury be readmonished." Court of Appeal Opinion, 104. As Respondent argues, Petitioner points to no evidence suggesting that the jury violated Judge O'Neill's admonitions.

The Court of Appeal further found as follows:

31

1

2

3

4

5

6

7

8

9

10

11

12

13

        With respect to Juror Number Five, Judge O'Neill was informed the juror was a nurse at APU at the same time Harrison was placed there.  If true, this information would not, without more, constitute good cause to doubt the juror's ability to perform her duties: as Judge O'Neill pointed out, all jurors were asked whether they recognized Harrison and this juror did not respond, implying she did not recall Harrison, and this situation was not surprising, given the high volume of patients at APU.  Thus, no inquiry was required. [Footnote omitted.] Judge O'Neill left open the possibility that a lawsuit against the juror might require her discharge, and he asked to see a copy of the pleadings and inquired whether she was named in the suit.  When Harrison conceded that she had not yet been named, Judge O'Neill appropriately found the facts insufficient to justify the juror's discharge.   However, nothing Judge O'Neill said precluded Harrison from presenting a copy of the lawsuit and explaining which allegation(s) applied to Juror Number Five.  Judge O'Neill simply warned Harrison not to name the juror for the purpose of securing her discharge from the jury.  The warning was not unwarranted, given Harrison's track record in this regard and changing allegations concerning the juror, and it was reasonable for Judge O'Neill to seek further information about the lawsuit before questioning the juror and possibly thereby creating bias where none existed. As to the possibility the juror might be biased because Harrison had filed a lawsuit against her employer, the record shows that, assuming Juror Number Five had indeed worked at APU, she had not done so in some time.  It makes sense that Judge O'Neill wanted to examine the lawsuit, to see whether there was any basis to believe she might have knowledge of it, before asking her about it.  Logically, if the juror had no knowledge of the lawsuit, it cannot possibly had biased her either because she was named therein, or because Harrison filed it against her employer.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Court of Appeal Opinion, 104-106.   The Court of Appeal concluded that Judge O'Neill's handling of the matter fell "well within the bounds of reason."  Id. at 106.

      Petitioner has presented nothing showing that  the California Supreme Court's adoption of the Court of Appeal's  finding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).   Petitioner has not demonstrated misconduct by the juror, much less that he was prejudiced.   Accordingly, this contention provides no basis for habeas corpus relief.

Shackling of Petitioner

      Petitioner claims in the fourteenth claim in his amended petition that constitutional error occurred when he was forced to wear leg shackles at trial.  He alleges instructional

error, a due process violation, and ineffective assistance of counsel.  Petitioner presented the first two claims to the state appellate court on direct appeal, and to the California Supreme Court in a petition for review.  Petitioner presented the ineffective assistance of counsel claim to the California Supreme Court in his petition for writ of habeas corpus.

It is undisputed that Petitioner wore leg shackles throughout trial and while testifying.  At the beginning of jury selection, Petitioner submitted a letter to Judge O'Neill complaining that the jury could see that his feet were shackled to the table.  Court of Appeal Opinion, 106.  Petitioner claimed that this was prejudicial, and that he had heard several potential jurors whispering that he was in shackles.  Id.  Defense counsel stated that he disagreed with Petitioner's claim of prejudice, and informed the court that he had made a strategic decision not to hide the fact that Petitioner was in custody.  Id.  Based on counsel's strategic decision, Judge O'Neill found the issue of Petitioner being in shackles to be moot.  Id. at 107.  Judge O'Neill noted that a skirt had been placed on the table at which Harrison was seated and no one was allowed in first row, and that everything possible had been done to be sure this was not an issue.

> Richardson did not elicit from Harrison that he was in custody or argue the point to the jury, nor did he request that the court give CALJIC 1.04. [Footnote omitted.] While Judge O'Neill did not give that instruction, he did tell jurors that they could not be biased against Harrison because he had been arrested, charged, or brought to trial; that none of those circumstances was evidence of guilt; and that jurors were not to infer or assume from any or all of them that Harrison was more likely to be guilty than innocent.

Court of Appeal Opinion, 108.

On appeal, Petitioner contended that Judge O'Neill erred by allowing the jury to see him in shackles, and that this error was compounded by the court's failure to give CALJIC No. 1.04.[3]  The Court of Appeal found that it "tend[ed] to agree with the People that any

---

[3]CALJIC No. 1.04 provided: "The fact that physical restraints have been placed on defendant [_____] must not be considered by you for any purpose.  They are not evidence of guilt, and must not be considered by you as any evidence that [he] [she] is more likely to be guilty than not guilty.  You must not speculate as to why restraints have been used.  In

1    issue of an inadequate showing ha[d] been waived." Court of Appeal Opinion, 109.

2    It found, however, that it did not need to decide that issue, because any error was harmless.

3    The Court of Appeal found that there was no evidence that the jury saw the restraints,

4    "[s]ignificantly, the record contains no hint that the shackles affected Harrison's decision to

5    take the stand or the quality of his testimony, or that jurors were aware that he was shackled

6    while testifying." Court of Appeal Opinion, 111.

7        In regard to Petitioner's complaint that Judge O'Neill did not instruct the jury in the

8    language of CALJIC No. 1.04, the Court of Appeal emphasized that "Judge O'Neill offered

9    to give the instruction *if* defense counsel raised the matter with the jury. Defense counsel did

10   not, nor did he request the instruction be given." Court of Appeal Opinion, 111. The Court

11   of Appeal did not find that the instruction was required, and also found that under the

12   circumstances of the case, its absence "was harmless under any standard." Id. at 112.

13       In light of the Court of Appeal's finding that there is no reliable evidence that the jury

14   saw Petitioner's restraints, this court finds that trial counsel acted reasonably in not objecting

15   to the restraints and in not requesting further curative instructions. Further, as argued by

16   Respondent, trial counsel reasonably concluded that the jurors might have sympathy for

17   Petitioner if they knew that he was shackled and was not attempting to hide that fact. Thus,

18   this court finds counsel's performance was not deficient, and that the state court's same

19   interpretation of the facts was not unreasonable.

20       This court must conclude that Petitioner has not carried his burden of demonstrating

21   that the California Supreme Court's decisions on these claims "resulted in a decision that was

22   contrary to, or involved an unreasonable application of, clearly established Federal law, as

23   determined by the Supreme Court of the United States;" or "resulted in a decision that was

24   based on an unreasonable determination of the facts in light of the evidence presented in the

25   State Court proceeding." 28 U.S.C. § 2254(d). These claims thus present no basis for habeas

26   _____

27   determining the issues in this case, disregard this matter entirely."

28                                        34

1  relief.

2  Prosecutorial Misconduct

3       Petitioner contends in the fifteenth claim of his amended petition that the prosecutor

4  committed prejudicial misconduct, which Judge O'Neill failed to control, during closing

5  argument.  Petitioner claims specifically that the prosecutor committed misconduct when he

6  referred to Petitioner as an "animal" and a "piece of garbage" during closing argument.

7  Petitioner presented this claim to the California Supreme Court on a petition for review.

8       A habeas petition will be granted for prosecutorial misconduct only when the

9  misconduct "so infected the trial with unfairness as to make the resulting conviction a denial

10  of due process."  Darden v. Wainwright, 477 U.S. 168, 171, 106 S.Ct. 2464 (1986) (quoting

11  Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974)); see, Bonin v.

12  Calderon, 59 F.3d 815, 843 (9th Cir. 1995).  To constitute a due process violation, the

13  prosecutorial misconduct must be "of sufficient significance to result in the denial of the

14  defendant's right to a fair trial."  Greer v. Miller, 485 U.S. 756, 765, 107 S.Ct. 3102, 3109

15  (1987) (quoting United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375 (1985)).  Under this

16  standard, a petitioner must show that there is a reasonable probability that the error

17  complained of affected the outcome of the trial - i.e., that absent the alleged impropriety, the

18  verdict probably would have been different.

19       In addressing this issue, the Court of Appeal found that the incident was brief and

20  isolated.  Court of Appeal Opinion, 117.  It further found that, "Judge O'Neill's observation

21  that the prosecutor was going too far, coupled with the prosecutor's subsequent apology for

22  his conduct, sufficiently indicated to jurors that they were not to consider what had

23  happened."  Id. at 117.  The Court of Appeal also rejected Petitioner's claim that the

24  shackling combined with the "animal" reference prejudiced him, because the combination

25  implied to the jury that Petitioner was dangerous.  The Court of Appeal found no reasonable

26  likelihood that the jury would have made that link.  Id. at 118.  Finally, the Court of Appeal

27

28                                          35

rejected the claim that Judge O'Neill failed to control the prosecutor's misconduct.  The Court of Appeal found that to the contrary, the judge adequately controlled his courtroom and discharged his duty to assure a fair trial.

This court finds that Petitioner has in no way demonstrated that the prosecutor's comments affected the outcome of the trial.  The court further finds, therefore, that Petitioner has  failed meet his burden of demonstrating that the Court of Appeal's  finding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  This claim presents no basis for habeas relief.

Ineffective Assistance of Appellate Counsel

Petitioner contends in his sixteenth claim in his amended petition that his appellate counsel was ineffective for failing to raise various claims in his direct appeal.  Petitioner presented this claim to the California Supreme Court in a petition for writ of habeas corpus.

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to Strickland 's two-pronged test.  Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); See, also, Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 353-54 (1988) (holding that where a defendant has been actually or constructively denied the assistance of appellate counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things.  First, he must establish that appellate counsel's deficient performance fell below an objective standard of reasonableness under

prevailing professional norms.   Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct.

2052, 2064 (1984).  Second, Petitioner must establish that he suffered prejudice in that there

was a reasonable probability that, but for counsel's unprofessional errors, she would have

prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to

undermine confidence in the outcome. Id. The relevant inquiry is not what counsel could

have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v.

Calderon, 151 F.3d 1170, 1173 (9th Cir.1998). The presumption of reasonableness is even

stronger for appellate counsel because he has wider discretion than trial counsel in weeding

out weaker issues; doing so is widely recognized as one of the hallmarks of effective

appellate assistance. Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir.1989).  Appealing every

arguable issue would do disservice to the Petitioner because it would draw an appellate

judge's attention away from stronger issues and reduce appellate counsel's credibility before

the appellate court. Id.  Appellate counsel has no constitutional duty to raise every

nonfrivolous issue requested by a petitioner. Id at 1434 n10 (citing Jones v. Barnes, 463 U.S.

745, 751-54, 103 S.Ct. 3308 (1983)).

     The court finds that Petitioner has not carried his burden of showing  that the

California Supreme Court's rejection of Petitioner's claim of ineffective assistance of counsel

resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law or  was based on an unreasonable determination of the facts.   First,

Petitioner has not shown that appellate counsel's  performance fell below an objective

standard of reasonableness under prevailing professional norms.  Specifically,  the sheer

number of the more than one hundred claims suggested by Petitioner indicate that it was

reasonable for appellate counsel to select the fifteen most meritorious claims to include in his

appellate briefing. See  Miller v. Keeney, 882 F.2d at 1434 n 10.  Further, to the extent that

Petitioner sought to have appellate counsel raise issues which were not preserved for appeal,

the California Supreme Court was in the position to find as a matter of state law that counsel

37

could not properly raise such issues in the Court of Appeal.  Furthermore, the California Supreme Court could find some of the claims were outside the four corners of the appellate record, to which appellate counsel was bound.  Finally,  as Respondent argues, many of the claims which Petitioner lists were in fact raised on appeal.

Second, Petitioner does not prove prejudice, i.e., he fails to show a reasonable probability that the outcome of the appeal would have been altered if appellate counsel had included his list of additional claims.  Petitioner's general allegation that error occurred and prejudice resulted is insufficient to establish ineffective assistance of appellate counsel.  See O'Bremski v. Maas, 915 F.2d 418, 420 (9th Cir. 1990)(to federal habeas relief,  "the petition is expected to state facts that point to a real possibility of constitutional error." [citations omitted]).

This court concludes, therefore, that Petitioner has failed meet his burden of demonstrating that the Court of Appeal's  finding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).   This claim thus presents no basis for habeas relief.

Denial of Marsden Motions

Petitioner contends in his seventeenth claim, found in the amendment to his petition filed June 4, 2007,  that his Marsden motions were denied in error.  This is the same contention made in Petitioner's original petition, with the addition of the claim that the trial court did not consider all the relevant evidence because the trial court may or may not have read some of Petitioner's written supplements to the motions.  Petitioner presented this claim to the California Supreme Court in a petition for writ of habeas corpus.

Petitioner's claim of error in regard to the trial court's denial of his Marsden motions is addressed and rejected above.  The Court of Appeal specifically found that the trial court

did read the written supplemental material.  Court of Appeal Opinion at 20 ("By our count, during the course of the hearing, Judge O'Neill expressly stated on *six separate occasions* that he had read the materials Harrison submitted.").  For this reason and the reasons previously discussed in connection with Petitioner's first claim, this court concludes that Petitioner has failed  carry his burden of demonstrating that the California Supreme Court's decision on this issue "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).   This claim thus presents no basis for habeas  relief.

Ineffective Assistance of Trial Counsel Based on Conflict of Interest

Petitioner contends in his eighteenth claim, set forth in the amendment to his petition filed June 4, 2007, that his trial counsel suffered from a conflict of interest so great that it deprived Petitioner of his Constitutional right to counsel.   Petitioner claims that his trial counsel was attempting to either have Petitioner committed to a mental institution or sentenced to prison to avoid a civil suit Petitioner had filed against him.  Petitioner presented this claim to the  California Supreme Court in a petition for review.

As Respondent claims, this is simply a restatement of one of Petitioner's previously stated bases for his claim of ineffective assistance of counsel, made in connection with his Marsden claim. Court of Appeal Opinion, 8.  As the Court of Appeal found, in partial response to this claim, trial counsel assured the court that he was acting as Petitioner's advocate.  Court of Appeal Opinion, 10.  The trial court found no reason to substitute counsel, the Court of Appeal agreed, and this court has upheld that decision in connection with the Marsden claim, discussed above. As this court has found that Petitioner has not carried his burden in regard to his Marsden claim, it is clear that he has failed meet his burden of demonstrating that the California Supreme Court's decision on this issue  "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). This claim presents no basis for habeas relief.

Ineffective Assistance of Counsel

Petitioner contends in his nineteenth claim, set forth in the amendment to his petition filed June 4, 2007, that his trial counsel was under the influence of mind-altering medication, was in serious pain, and was otherwise affected mentally so as not to be performing as the counsel guaranteed by the Sixth Amendment. Petitioner presented this claim to the Supreme Court of California in a petition for writ of habeas corpus.

Petitioner cites to numerous places in the record where trial counsel acknowledges that he is taking medication for back pain. The court finds, however, that there is no indication in the record that counsel was under the influence of the medication to such an extent that he ceased to function as effective counsel, as guaranteed by the Sixth Amendment. As Respondent argues, Petitioner's evidence that trial counsel appeared to be under the influence of medication is a restatement of the many disagreements Petitioner had with his trial counsel's trial decisions. Petitioner's claim of ineffective assistance has been rejected. The court finds, therefore, that Petitioner has failed to meet his burden of demonstrating that the California Supreme Court's decision on this matter "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). The claim presents no basis for habeas corpus relief.

//

40

Denial of Motion to Dismiss

Petitioner claims in his twentieth and twenty-first claims, set forth in the amendment to his petition filed June 4, 2007, that his trial counsel did not timely request dismissal of the criminal charges against him after the initial competency determination, and that his mental competency was such that the trial court should have dismissed the charges against him. Petitioner presented these claims to the California Supreme Court in a petition for review.   . As Respondent argues, Petitioner is simply repeating the claims he made in claims three and four of his amended petition, addressed above.  The court finds that these claims present no basis for habeas relief for  the same reasons stated as to claims three and four.

Failure to Grant Additional Competency Determinations

Petitioner claims in his twenty-third claim, set forth in the amendment to his petition filed June 4, 2007, that his trial counsel was ineffective for conceding that he was not entitled to a jury trial on the issue of competence. He also argues that his trial counsel was ineffective for failing to argue the evidence of his competence was false and erroneously obtained. Petitioner presented the first of these arguments to the Court of Appeal  to the California Supreme Court in a petition for review.  Petitioner made the second argument in his petition for writ of habeas corpus filed with the California Supreme Court.  These are the same claims raised by Petitioner in claim 6 of his amended petition, addressed above.  This court finds they provide no basis for habeas corpus relief  for the same reasons discussed in connection with claim 6.

Additional Competency Determinations

Petitioner contends in his twenty-fourth claim, set forth in the amendment to his petition filed June 4, 2007,  that the trial court should have referred him for further competency hearings.  Petitioner presented this claim to the California Supreme Court in a petition for review. Petitioner made this same claim in his amended petition in connection with claim seven.  This court finds that this claim presents no basis for habeas relief for the

41

same reasons it rejected claim seven.

Denial of Motion to Disqualify Judge

Petitioner contends in his twenty-fifth claim, set forth in the amendment to his petition filed June 4, 2007, that the trial court erroneously denied his motion to disqualify Judge O'Neill, and that his trial counsel was ineffective for failing to raise this issue by way of a writ.  Petitioner presented this claim  to the California Supreme Court in a petition for review.  Petitioner made this same argument in  claim eight of his amended petition. This court finds that the claim provides no basis for habeas relief for the same reasons it found in regard to claim eight.

Denial of Motion for More Peremptory Challenges

Petitioner claims in his twenty-sixth claim, set forth in the amendment to his petition filed June 4, 2007, that the trial court erroneously denied his motion to allow the parties additional peremptory challenges.  Petitioner presented this claim to the Califoria Supreme Court in a petition for review. Petitioner made this same claim in his amended petition at claim nine.  This court finds that this claim presents no basis for habeas corpus relief for the same reasons it discussed in connection with claim nine.

Denial of Use of Expert Testimony

Petitioner claims in his twenty-seventh claim, set forth in the amendment to his petition filed June 4, 2007,  that the trial court erroneously excluded expert testimony which would have focused on the investigative techniques used to gather information from Petitioner's child victims.  Petitioner presented this claim to the California Supreme Court in a petition for review.  Petitioner made this same claim in claim ten of his amended petition. This court finds that this claim presents no basis for habeas relief for the same reasons it found in regard to claim ten.

Denial of Use of Expert Testimony

Petitioner claims in his twenty-eighth claim, set forth in the amendment to his petition

42

filed June 4, 2007, that the trial court's denial of his request to allow expert testimony violated California constitutional and statutory principles, and that this violation of state law violates a federal Constitutional right.  Petitioner presented this claim to the California Supreme court in a petition for writ of habeas corpus.  Petitioner made this same claim in his amended petition at claim eleven.  This court finds that this claim presents no basis for habeas relief for the same reasons in found in regard to claim eleven.

Various Evidentiary Rulings

Petitioner contends in his twenty-ninth claim, set forth in the amendment to his petition filed June 4, 2007, that the trial court made vaious evidentiary rulings that combined to deprive him of due process.  Petitioner presented this claim to the California Supreme Court in a petition for review.  Petitioner made this same claim in his amended petition at claim twelve.  This court finds that this claim presents no basis for habeas relief for the same reasons it found as to claim twelve.

Petitioner also claims that several other rulings excluding evidence violated his Constitutional rights, i.e., his right to present a defense.  The legal standard is the same as set forth above in connection with claim twelve.  Petitioner points out that the trial court excluded five additional pieces of evidence: two involving statements the brothers made to sexual abuse counselors; an allegation that Sylvia objected to being in Richard N.'s care because she feared abuse; an allegation that Cynthia was coerced by sexual abuse counselors to make statements against Petitioner; and an allegation that Cynthia told sexual abuse counselors that Janiva claimed she was molested by a third party.   The trial court excluded any statements by the brothers to sexual abuse counselors as privileged under the patient-psychotherapist privilege.  It  recognized Petitioner was attempting to use the testimony to show the sexual abuse counselors' questions were suggestive, and suggested a different way to introduce the same information.  With regard to the evidence about Sylvia and Richard, the trial court excluded the evidence because the probative value did not outweigh the prejudice.

43

1    The trial court told defense counsel that he had been given a great deal of latitude in proving

2    Sylvia was living in difficult conditions and was looking for love, and that there was

3    sufficient admissible evidence to show those facts.  With regard to Cynthia being coerced, the

4    trial court  allowed such evidence if it was competent and based on personal knowledge.

5    With regard to Cynthia's version of Janiva's statement, defense counsel wanted to show that

6    Janiva had been raped by a third party at some unnamed time and place.  The trial court heard

7    argument that  the information regarding this alleged rape was not specific at all, and only

8    had a vague bearing on Janiva's credibility.  Also, Janiva testified with certainty that

9    Petitioner had molested her.

10        The trial court excluded the evidence on the grounds that the information was

11    irrelevant, not specific enough, and that the probative value did not outweigh the prejudicial

12    effect the evidence would have .  Further, the trial court allowed Petitioner to elicit evidence,

13    simply in a more focused way then he had originally requested.  This court finds no error or

14    abuse or discretion by the trial court in these additional evidentiary rulings, and concludes

15    that they provide no basis for habeas corpus relief.

16    Inquiry into Juror Misconduct

17        Petitioner claims in his thirtieth claim, set forth in the amendment to his petition filed

18    June 4, 2007, that the trial court failed to inquiry into possible juror misconduct.  Petitioner

19    makes two allegations in support of this claim.  First, he alleges that the jurors felt sympathy

20    for one of the victims and were discussing the issue.  Second, he alleges that Juror No. 5 was

21    biased towards him because she or her co-workers were defendants in a lawsuit Petitioner

22    filed.  Petitioner presented this claim to the California Supreme Court in a petition for review.

23    Petitioner made this same claim in his amended petition at claim thirteen.  This court finds

24    that the claim fails to state a basis for habeas relief for the same reasons it reached that

25    conclusion as to claim thirteen.

26    Ineffective Assistance of Counsel re Expert Testimony

27

28                                      44

Petitioner claims in his thirty-first claim that his trial counsel was ineffective with regard to the admission of expert testimony on the issue of the procedures sexual abuse counselors used in this case, and a sexually abused child's memory in general.  This claim is almost the same as Petitioner's arguments at claim ten in his amended petition.  However, Petitioner now argues that his trial counsel should have done more to get this evidence admitted.  Specifically, Petitioner claims that trial counsel should have retained the experts earlier, had the experts interview the sexual abuse counselors, and further investigate the sexual abuse counselors' techniques in this case.  Petitioner presented this claim to the California Supreme Court in a petition for writ of habeas corpus.

As Respondent argues, Petitioner lacks personal knowledge of all the efforts his trial counsel made and cannot show that trial counsel did not hire the experts at the earliest possible time, attempt to have the experts interview the sexual abuse counselors, and investigate the procedures used by the sexual abuse counselors.  Therefore, this court finds that the California Supreme Court could have reasonably found that Petitioner had failed to meet his burden of demonstrating that trial counsel's performance was deficient.

Further, there is no indication that the trial court's ruling excluding expert testimony in this regard would have been different had trial counsel done the things Petitioner proposes.  Thus, the California  Supreme Court could have reasonably found that Petitioner had failed to meet his burden of demonstrating prejudice.  This court therefore finds that as the state court's denial was a reasonable application of the Strickland standard, and that Petitioner has failed to carry his burden of demonstrating any that the California Supreme Court's decision resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  This claim thus presents no basis for habeas corpus relief.

1    Ineffective Assistance of Counsel re Research and Investigation

2         Petitioner claims in his thirty-second claim, set forth in the amendment to his petition

3    filed June 4, 2007, that his trial counsel was ineffective for failing to adequately research and

4    properly investigate evidence and witnesses.   Petitioner essentially argues that his trial

5    counsel should have been more diligent about getting excluded evidence admitted by way of

6    testimony of sexual abuse counselors.   This potential testimony would have been as to

7    statements the victims made the sexual abuse counselors.   The trial court excluded this

8    testimony in the form of cross-examination of the victims themselves.   Petitioner now claims

9    that trial counsel should have moved to have the sexual abuse counselors testify as to the

10   statements.   Petitioner presented this claim to the California Supreme Court in a petition for

11   writ of habeas corpus.

12        As Respondent argues, Petitioner's trial counsel reasonably refrained from seeking to

13   have the sexual abuse counselors testify, because the trial court had made clear that the

14   statements the victims made to the counselors were privileged.   Further, the trial court ruled

15   that the prejudicial effect of the excluded evidence outweighed any probative value it had.

16   Thus, trial counsel's attempt to introduce this evidence through an alternative means would

17   have been futile.   For these reasons the California Supreme Court could have reasonably

18   found that Petitioner had failed to meet his burden of demonstrating prejudice.   This court

19   therefore finds that as the state court's denial was a reasonable application of the Strickland

20   standard, and that Petitioner has failed to carry his burden of demonstrating any that the

21   California Supreme Court's decision resulted in a decision that was contrary to, or involved

22   an unreasonable application of, clearly established Federal law, as determined by the

23   Supreme Court of the United States;" or "resulted in a decision that was based on an

24   unreasonable determination of the facts in light of the evidence presented in the State Court

25   proceeding." 28 U.S.C. § 2254(d).   This claim thus presents no basis for habeas corpus

26   relief.

27

28                                             46

1   Wearing of Leg Shackles

2       Petitioner contends in his thirty-third claim, set forth in the amendment to his petition

3   filed June 4, 2007, that constitutional error occurred when he was forced to wear leg shackles

4   at trial.  Specifically, Petitioner alleges instructional error, a due process violation, and

5   ineffective assistance of counsel.  Petitioner presented the first two claims to the California

6   Supreme Court in a petition for review.   Petitioner presented his ineffective assistance claim

7   to the California Supreme Court in his petition for writ of habeas corpus.   Petitioner made

8   these arguments in his amended petition at claim fourteen.  This court finds that this claim

9   presents no basis for habeas corpus relief for the same reasons it found in regard to claim

10  fourteen.

11  Prosecutorial Misconduct

12      Petitioner claims in his thirty-fourth claim, set forth in the amendment to his petition

13  filed June 4, 2007, that the prosecutor committed misconduct during closing argument.

14  Petitioner presented this claim to the California Supreme Court in a petition for review.

15  Petitioner made this same argument in  claim fifteen of his amended petition.  This court

16  finds that this claim presents no basis for habeas relief for the same reasons it reached that

17  conclusion in regard to  claim fifteen.

18  Various Errors

19      Petitioner claims in his thirty-fifth claim, set forth in the amendment to his petition

20  filed June 4, 2007, that various errors that occurred in connection with his case violated his

21  constitutional rights.  Petitioner presented this claim to the California Supreme Court in a

22  petition for writ of habeas corpus.

23      Petitioner claims that the victims in this case were prepared and coached by the

24  prosecution and sexual abuse counselors to identify Petitioner as having committed the

25  charged crimes.  Petitioner's citations to the record  do not show that any witnesses were

26  coached or provided false testimony.   Petitioner has not demonstrated any basis for habeas

27

28                                      47

relief as to this claim.

Petitioner claims that his preliminary hearing did not give him adequate notice of the charges against him.

> The Sixth Amendment guarantees a criminal defendant the fundamental right to be informed of the nature and cause of the charges made against him so as to permit adequate preparation of a defense. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation...."); Cole v. Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948) ("It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it *1003 would be to convict him upon a charge that was never made."); In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense-a right to his day in court-are basic in our system of jurisprudence...."); Jackson v. Virginia, 443 U.S. 307, 314, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ("[A] person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend."). This guarantee is applicable to the states through the due process clause of the Fourteenth Amendment. See Cole, 333 U.S. at 201, 68 S.Ct. 514 ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.").

> FN10 When determining whether a defendant has received fair notice of the charges against him, we begin by analyzing the content of the information. See Cole, 333 U.S. at 198, 68 S.Ct. 514; see also James v. Borg, 24 F.3d 20, 24 (9th Cir.1994) (holding that to determine whether the defendant had adequate notice, "the court looks first to the information," the "principal purpose of [which] is to provide the defendant with a description of the charges against him in sufficient detail to enable him to prepare his defense") (citing Lincoln v. Sunn, 807 F.2d 805, 812 (9th Cir.1987); cf. Stirone, 361 U.S. at 217, 80 S.Ct. 270 (stating that under the Fifth Amendment's right to a grand jury indictment, "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him").

Gautt v. Lewis, 489 F.3d 993, 1003 (9th Cir. 2007).   Here, the information notified Petitioner of the specific crime, the specific victim, and a specific time period.  As Respondent argues, no more is Constitutionally required.  This claim presents no basis for habeas relief.

Petitioner claims he received ineffective assistance of counsel, based on a series of claims including, but not limited to, claims that trial counsel did not show that Petitioner did not commit the charged crimes, that trial counsel's investigation was insufficient, that counsel should have employed other trial strategy, counsel should have given a different closing argument, and that counsel should have objected to the victims identifying Petitioner

48

1   from a photograph because it was too suggestive.

2          The court has examined each of Petitioner's claims in detail and concludes that

3   Petitioner has not met his burden of demonstrating either prong of <u>Strickland</u> as to any of

4   the claims.  The court notes in particular that Petitioner cannot know every area of

5   investigation and preparation that trial counsel undertook, and his list of investigative issue

6   allegedly missed by trial counsel, even if true, in no way demonstrates that counsel's

7   performance was deficient. Similarly, Petitioner's arguments as to trial strategy not taken by

8   trial counsel does not demonstrate a deficiency in the strategy that was used.  Finally,

9   Petitioner's argument regarding photographic identification shows no deficiency on the part

10  of trial counsel.  As Respondent argues, because Petitioner had lived with the victims as a

11  father figure for several years, misidentification was extremely unlikely.  Thus, counsel did

12  not act unreasonably in deciding not to object to presenting the victims with Petitioner's

13  photograph.

14         Petitioner claims that the prosecutor committed misconduct by misstating the

15  evidence at closing argument to his prejudice.  As set forth above, a habeas petition will be

16  granted for prosecutorial misconduct only when the misconduct "so infected the trial with

17  unfairness as to make the resulting conviction a denial of due process."  <u>Darden v.</u>

18  <u>Wainwright</u>, 477 U.S. at 171.

19         Here, Petitioner claims that the prosecutor misstated various dates and details.  The

20  court agrees with Respondent that the  misstatements made by the prosecutor, if any, were

21  cured by the trial court's jury instructions.  Prior to the commencement of trial and again

22  before counsel started their respective closing arguments, the trial court instructed the jury

23  that statements of the attorneys were not evidence and that the jury was to determine the facts

24  and whether the facts were sufficiently proven.  Any alleged misstatements by the prosecutor

25  were cured by these instructions, and Petitioner's claim presents no basis for relief.

26

27

28                                                    49

Ineffective Assistance of Counsel

Petitioner contends in his thirty-sixth claim, set forth in the amendment to his petition filed June 4, 2007, that his trial counsel was ineffective for failing to elicit evidence that Petitioner has sexually transmitted diseases ("STDs").   Petitioner argues that trial counsel could have then argued that Petitioner would have passed these STDs on to his victims, and that they would necessarily test positive for these diseases.  If the victims did not test positively, it would show that Petitioner was not the perpetrator.  Petitioner presented this claim to the California Supreme Court in a petition for writ of habeas corpus.

The court finds that Petitioner's counsel acted well within the range of competent professional representation in deciding not to investigate or introduce such evidence.  This evidence was likely to inflame the jury, because of the risk of transmission to Petitioner's victims. Further, it is widely known that many people regard those who suffer from sexually transmitted diseases to be morally deficient.  Further, as Respondent argues, Petitioner does not prove that he has an STD, the victims do not have an STD, or that his trial counsel failed to investigate the matter.  Further, in light of the great weight of evidence against Petitioner, the California Supreme Court would have reasonably decided that Petitioner suffered no prejudice in regard to this issue.  Accordingly, this court concludes that Petitioner has not met his burden of demonstrating that the California Supreme Court's ruling was contrary to, or involved an unreasonable application of the Strickland standard.  This claim thus presents no basis for habeas corpus relief.

Error in Jury Instructions

Petitioner claims in his thirty-seventh claim, set forth in the amendment to his petition filed June 4, 2007, that the trial court erred by failing to instruct the jury, sua sponte, that Eshelman was an accomplice and aided and abetted Petitioner in the charged crimes. Petitioner reasons that if Eshelman is an accomplice, Petitioner would be entitled to a jury instruction that Eshelman's testimony is less credible.  Alternatively, Petitioner argues that

trial counsel was ineffective for failing to request the instructions.  Petitioner presented this claim to the California Supreme Court in his petition for writ of habeas corpus.

As a preliminary matter, the court notes that an allegation that a jury instruction is incorrect under state law does not form a basis for federal habeas corpus relief.  Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475 (1991) ("We have stated many times that federal habeas  corpus relief does not lie for errors of state law.").  Rather, a habeas court must consider "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process' ... not merely whether  'the instruction is undesirable, erroneous, or even universally condemned.'"  Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730 (1977) (quoting Cupp v. Naughten, 414 U.S. 141, 146-47, 94 S.Ct. 396 (1973));  California v. Roy, 519 U.S. 2, 5, 117 S.Ct. 337, 338 (1996) (challenge in habeas to the trial court's jury instructions is reviewed under the standard in Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993) - whether the error had a substantial and injurious effect or influence in determining the jury's verdict.).

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Id.  In addition, the court notes that Petitioner's burden is "especially heavy" with this claim, because "[a]n omission or an incomplete instruction is less likely to be prejudicial than a misstatement of law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

Here, Petitioner is unable to carry his burden because there is no constitutional requirement for accomplice or aider and abettor instructions for uncharged third parties, and Eshelman was not charged in this case.  Accordingly, Petitioner does not carry his burden of demonstrating any that the California Supreme Court's decision resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).   This claim thus presents no basis for habeas corpus relief.

Ineffective Assistance of Counsel

Petitioner contends in his thirty-eighth claim that trial counsel was ineffective for failing to move to suppress the gun or requesting a limiting instruction to focus the jury's use of the gun.  Petitioner presented this claim to the California Supreme Court in his petition for writ of habeas corpus.

In this case, Petitioner was charged, inter alia,  with forcible oral copulation on Sylvia G, and traumatic injury on a cohabitant.  During the traumatic injury of a cohabitant, Petitioner threatened to blow his victim's head off with a gun.  Petitioner also threatened to shoot the victim's sons.  During the forcible oral copulation, Petitioner showed his victim the gun and told her he would hurt her if she did not do as he asked.   Shortly after the incident, Petitioner was found with a loaded shotgun.  The court must agree with Respondent that Petitioner's argument that counsel should have argued that the prejudicial effect of the gun outweighed its probative value is without merit.  Further, Petitioner's argument regarding a limiting instruction is similarly without a factual or legal basis.  The gun pertained only to the two above crimes, and there is no indication that the jury could have used the evidence for any other purpose.

. Accordingly, this court concludes that Petitioner has not met his burden of demonstrating that the California Supreme Court's ruling was contrary to, or involved an unreasonable application of the Strickland standard.  This claim thus presents no basis for habeas corpus relief.

Trial Errors

Petitioner alleges a variety of trial errors in his thirty-ninth claim set forth in the amendment to his petition filed June 4, 2007.  Petitioner presented this claim to the

1    California Supreme Court in his petition for writ of habeas corpus.

2         Petitioner alleges a myriad of claims, most of which are conclusory allegations that do

3    not warrant habeas relief.  See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir.1995).  Four

4    identifiable contentions exist within the thirty-ninth claim  Within the context of a claim of

5    ineffective assistance of counsel, Petitioner contends that insufficient evidence was presented

6    to support his conviction for kidnapping Sylvia G. with intent to commit lewd and lascivious

7    conduct.

8         The law on insufficiency of the evidence claim is clearly established.  The United

9    States Supreme Court has held that when reviewing an insufficiency of the evidence claim on

10   habeas, a federal court must determine whether, viewing the evidence and the inferences to

11   be drawn from it in the light most favorable to the prosecution, any rational trier of fact could

12   find the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443

13   U.S. 307, 319 (1979).  Sufficiency claims are judged by the elements defined by state law.

14   Id. at 324 n. 16.

15        In this case, Petitioner argues he did not trick or entice Sylvia to accompany him, and

16   claims that Sylvia wanted to go with him for independent reasons.  See California Penal

17   Code § 207(b) (providing that the taking could be by means of hiring, persuading, enticing,

18   decoying, or seducing).  However, Petitioner's attempts to interpret the evidence in his favor

19   do not meet the standard for habeas relief.  This is because Petitioner does not show that the

20   California Supreme Court misapplied the Jackson standard.  Rather, he simply argues another

21   arguably possible interpretation of the evidence.

22        Petitioner claims that his trial counsel was ineffective for failing to argue California

23   Penal Code § 207's exception to the kidnaping of which he was convicted.   The exception

24   provided that the perpetrator was not guilty of kidnaping if his purpose was to protect the

25   child from imminent danger or harm.  Cal. Penal Code § 207(f)(1).  Petitioner presents no

26   evidence, except that Sylvia's parents were drug addicts, that his intent was to protect the girl

27

28                                          53

1   from imminent harm.  A trial counsel's failure to raise a meritless argument such as this does

2   not constitute ineffective assistance of counsel.  See, Shah v. United States, 878 F.2d 1156,

3   1162 (9th Cir.1989).

4        Petitioner also contends that trial counsel was ineffective for failing to attack Sylvia's

5   parents' credibility in several grounds.  Specifically, he claims that trial counsel should have

6   impeached the parents' testimony by showing that they were drug addicts, that Sylvia's

7   mother was a prostitute, that the parents did not care about Sylvia, and that they fabricated the

8   entire story of Sylvia's abduction and molestation to avoid the possibility of their own arrest.

9   Petitioner presents nothing to show that this line of impeachment is credible.  Petitioner fails

10  to establish either prong of the Strickland standard in regard to this claim.

11       Petitioner further contends that trial counsel should have presented evidence that the

12  physical evidence of the lewd acts with Sylvia was inconclusive and false.  He argues that

13  Sylvia showed no physical signs of rape, and that trial counsel should have found other

14  women who had blood type "O" to show the saliva found in his underwear was not Syliva's.

15  However, Petitioner's trial counsel did elicit expert testimony that the victims in this case

16  showed no physical signs of rape.  Further, the tests on the saliva in Petitioner's underwear

17  was inconclusive.  Petitioner has not shown that trial counsel's performance was ineffective

18  under the first prong of Strickland .

19       Petitioner claims that the prosecutor misstated the evidence at closing argument when

20  he said that Sylvia immediately told he parents and law enforcement that Petitioner had

21  molested her.  He argues that Sylvia actually stated that nothing happened immediately upon

22  returning home and only to told her parents Petitioner had molested her after her mother took

23  her aside and questioned her.   Respondent agrees that Petitioner's time line is correct.    A

24  habeas petition will be granted for prosecutorial misconduct only when the misconduct "so

25  infected the trial with unfairness as to make the resulting conviction a denial of due process."

26  Darden v. Wainwright, 477 U.S. 168, 171, 106 S.Ct. 2464 (1986) (quoting Donnelly v.

27

28                                      54

DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974)).  The conflict here is over the definition of "immediately," and this court is unconvinced that  the prosecutor mischaracterized the evidence.  Further, the trial court instructed the jury that statements of the attorneys were not evidence and that the jury was to determine the facts and whether the facts were sufficiently proven.  Thus, any misstatement by the prosecutor was cured by the court's instruction and Petitioner has failed to make the showing necessary for habeas relief on this issue.

Petitioner contends that the trial court improperly imposed a sentence enhancement pursuant to California Penal Code § 667.8.  Petitioner's contention is meritless.  The trial court did not impose that enhancement.

In conclusion, Petitioner has not shown that the California Supreme Court, in rejecting these claims, reached a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  This claim therefore provides no basis for habeas relief.

Deprivation of Speedy Trial

Petitioner claims in his fortieth claim, set forth in the amendment to his petition filed June 4, 2007, that he was denied his right to a speedy trial.  Petitioner argues that several delays due to substitute counsel and competency determinations and commitments violated his constitutional rights.  Petitioner presented this claim to the California Supreme Court in his petition for writ of habeas corpus.

Pre-indictment delay is covered by the applicable statute of limitations and the Fifth Amendment guarantee of due process.  United States v. Lovasco, 431 U.S. 783, - 788-89 (1997).  "[S]tatutes of limitation, which provide predictable, legislatively enacted limits on prosecutorial delay, provide the primary guarantee against bringing overly stale criminal

1    charges." Id. (internal quotation marks omitted).  However, "the statute of limitations does

2    not fully define defendants' rights with respect to the events occurring prior to indictment .  .

3    .  the Due Process Clause has a limited role to play in protecting against oppressive delay."

4    Id. (Internal quotation marks and citations omitted).

5         There is a two-pronged test to gauge pre-indictment delay.  A petitioner must first

6    show actual prejudice from the delay.  United States v. Huntley, 976 F.2d 1287, 1291 (9th Cir.

7    1992). Then, if actual prejudice is shown, the reason for the delay must be balanced against

8    the prejudice.  Id.  The actual prejudice test is applied stringently, requiring proof which is

9    definite and not speculative.  United States v. Butz, 982 F.2d 1378, 1380 (9th Cir. 1993).

10        In this case, it was alleged that Petitioner committed the crimes between March of

11   1988 and August of 1989.  Petitioner was originally arraigned December 20, 1989, on the

12   charges in which Sylvia was the victim.  Petitioner was arraigned on all the charges of which

13   he was convicted on July 18, 1994.  As Respondent argues, Petitioner has not carried his

14   burden of demonstrating prejudice due to pre-indictment delay.   Rather, Petitioner attempted

15   to use faded memory to his advantage at trial, focusing on the victim-witnesses

16   inconsistencies and failed memories.  Petitioner appears to have benefitted from the delay,

17   rather than suffered by it.  Thus, the California Supreme Court could have reasonably

18   concluded that Petitioner failed to make the necessary showing of prejudice.

19        "The Sixth Amendment guarantees that in all criminal prosecutions, the accused shall

20   enjoy the right to a speedy trial."  Doggett v. U.S., 505 U.S. 674, 651 (1992); see also United

21   States v. Beamon, 992 F.2d 1009, 1012 (9th Cir. 1993).  Although the Sixth Amendment

22   Speedy Trial Clause is broad on its face, its breadth has been qualified by case law which

23   recognizes the relevance of four separate enquiries: (1) whether delay before trial was

24   uncommonly long, (2) whether the government or the criminal defendant is more to blame

25   for that delay, (3) whether, in due course, the defendant asserted his right to a speedy trial,

26   and (4) whether he suffered prejudice as the delay's result.  Doggett, 505 U.S. at 651; see also

27

28                                              56

1    Barker v. Wingo, 407 U.S. 514, 530 (1972.)

2        Doggett breaks the first inquiry, length of delay, into two steps.  Doggett, 505 U.S. at

3    652-653; Beamon, 992 F.2d at 1012.  To trigger a speedy trial inquiry, an accused must show

4    that the period between indictment and trial passes a threshold point of "presumptively

5    prejudicial"delay.  Beamon, 992 F.2d at 1012.  If this threshold is not met, the court does not

6    proceed with the Barker factors.  Id.  If, however, the threshold showing is made, the court

7    considers the extent to which the delay exceeds the threshold point in light of the degree of

8    diligence by the government and acquiescence by the defendant to determine whether

9    sufficient prejudice exists to warrant relief.  Id.

10        In this case, the length of post-indictment delay exceeds the threshold minimum

11    beyond which a court will presume prejudice to the defendant.  "Depending on the nature of

12    the charges, the lower courts have generally found postaccusation delay 'presumptively

13    prejudicial' at least as it approaches one year."  Doggett, 505 U.S. at 652 n.1.  Petitioner was

14    originally arraigned on December 20, 1989.  A jury was empaneled on October 12, 1994.  As

15    Respondent argues, the procedural history of this case explains this seemingly long delay.

16        Shortly after the arraignment, Petitioner's counsel filed a motion for psychiatric

17    treatment for Petitioner.  By that time, Petitioner had already filed one of his many motions to

18    disqualify counsel.  He had also disqualified the first judge on the case.   Petitioner was soon

19    appointed his third attorney.  On April 10, 1990, Petitioner received a denial of a writ of

20    habeas corpus he had previously filed.  By that time, the issue of Petitioner's competence had

21    overtaken trial proceedings.  Petitioner was declared incompetent to stand trial and was

22    committed to a state hospital.

23        In December of 1990, the trial court determined Petitioner's competency had been

24    restored and criminal proceedings were reinstated.  Petitioner's high volume of motions

25    continued.  He filed motions for writ of mandate, motions to substitute counsel, motions for

26    writ of habeas corpus, and motions to disqualify judges.  Petitioner successfully requested to

27

28                                                57

be housed in a psychiatric facility, but the trial continued.  Petitioner continued to make repeated claims regarding competency, attorney malfeasance and judicial bias.  On July 8, 1991, Petitioner was again found to be incompetent and was sent to a state hospital.   For most of the next year, Petitioner filed numerous motions for substitute counsel, to disqualify judges, and to set aside the information.  He also filed  a law suit against his attorney. Petitioner was again found not competent to stand trial on June 19, 1992.

In August 1993, the trial court again found Petitioner's competency restored. Numerous motions continued for the rest of the year, mainly based on competency issues. Early in 1994 Petitioner brought new motions to substitute counsel.  On March 16, 1994, the trial court found "absolutely no doubt" that Petitioner was "trial competent."  Criminal proceedings were reinstated on April 6, 1994.  A consolidated information was filed July 13, 1994.  Many different pretrial motions were heard over the next three months, including more motions to substitute counsel and to disqualify the judge.  A jury was empaneled October 12, 1994.

The court agrees with Respondent that given the procedural history of this case summarized above, including the approximately two years Petitioner was declared to be incompetent and the related litigation, the delay was not disproportionate to the level of litigation.  In applying the second Doggett factor to this case, the delay in the prosecution of this case filed almost innumerable motions.  The resolution of those motions, including commitment to the state hospital, took time.  Petitioner has not identified any delays attributable to the government.

Applying the third Doggett factor, it appears that Petitioner did assert his right to a speedy trial.  There is no indication, however, that the trial court delayed the proceedings in this case.  Rather, it was only the large number of motions and the complexity of the litigation that caused the delay in Petitioner's case.  Finally, under the fourth Doggett factor, Petitioner has shown no prejudice.  As explained above, Petitioner attempted to use faded

58

1    memory and inconsistency to his advantage.

2            Based on the above, the court finds that the California Supreme Court could have

3    reasonably concluded that Petitioner's speedy trial claims were meritless under clearly

4    established Federal law.  Thus Petitioner has not carried his burden of showing that the

5    California Supreme Court, in rejecting the claims, reached a decision that was contrary to, or

6    involved an unreasonable application of, clearly established Federal law, as determined by

7    the Supreme Court of the United States;" or "resulted in a decision that was based on an

8    unreasonable determination of the facts in light of the evidence presented in the State Court

9    proceeding." 28 U.S.C. § 2254(d).  These claim therefore provides no basis for habeas relief.

10   <u>Ineffective Assistance of Trial Counsel</u>

11           Petitioner contends in this forty-first claim, set forth in the amendment to his petition

12   filed June 4, 2007, that trial counsel was ineffective for failing to investigate and present

13   evidence of a conspiracy against him by the families of each of the victims.   Petitioner

14   presented this claim to the California Supreme Court in his petition for writ of habeas corpus.

15           As Respondent argues, Petitioner does not present meaningful evidence to support his

16   claim of a conspiracy.  He does not prove that he is a confidential informant who helped

17   convict the victims' friends and family members, that the victims' families knew he was a

18   confidential informant, or that each of the families decided to retaliate against him through

19   false sexual misconduct allegations.  Petitioner does not prove that trial counsel did not

20   investigate the possibility of such a conspiracy.  This court finds, therefore, that the

21   California Supreme Court could have reasonably concluded that Petitioner failed to establish

22   either prong of the <u>Strickland</u> standard.  Petitioner thus has not met his burden of showing

23   that the California Supreme Court, in rejecting this claim, reached a decision that was

24   contrary to, or involved an unreasonable application of, clearly established Federal law, as

25   determined by the Supreme Court of the United States;" or "resulted in a decision that was

26   based on an unreasonable determination of the facts in light of the evidence presented in the

27

28                                                        59

State Court proceeding." 28 U.S.C. § 2254(d).  This claim therefore provides no basis for habeas relief.

Ineffective Assistance of Counsel

Petitioner claims in his forty-second claim, set forth in the amendment to his petition filed June 4, 2007, that his trial counsel was ineffective for failing to investigate and present evidence of voluntary intoxication.  Voluntary intoxication is a defense wherein a defendant attempts to raise a reasonable doubt by showing that he lacked the requisite mens rea for a particular crime.  See People v. San Nicolas, 34 Cal.4th 614, 669 (2004).  To have raised this defense, Petitioner would have had to admit that he committed the charged acts, but have argued that he did not have the required mental state for the acts to constitute a crime.  This line of defense would have been directly contrary to Petitioner's sworn denial that any of the sexual misconduct took place.  Thus, the California Supreme Court could have reasonably determined that Petitioner failed to show that this trial counsel was ineffective for failing to present this defense.   Petitioner thus has not met his burden of showing that the California Supreme Court, in rejecting this claim, reached a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  This claim therefore provides no basis for habeas relief.

Trial Error under Cunningham

Petitioner contends in this forty-third claim, set forth in the amendment to his petition filed June 4, 2007, that the trial court erred by imposing an upper term on numerous counts based on facts that were neither found by the jury nor admitted by Petitioner.  Petitioner relies on Blakely v. Washington, 542 U.S. 296 (2004) and, presumably, Cunningham v. California, 127 S.Ct. 856 (2007).

In Teague v. Lane, the Supreme Court held  that a new rule of constitutional law

cannot be applied retroactively on federal collateral review to upset a state conviction or sentence unless the new rule forbids criminal punishment of primary, individual conduct or is a "watershed" rule of criminal procedure. Caspari v. Bohlen, 510 U.S. 383, 396, 114 S.Ct. 948 (1994). If the state argues that a petitioner seeks the benefit of a new rule, federal courts must decide whether Teague is implicated before reaching the merits of a petition. Id. at 389, 114 S.Ct. 948.

The relevant preceding cases were succinctly described by the Court in Cunningham, as follows:

> In Apprendi v. New Jersey, this Court held that, under the Sixth Amendment, any fact (other than a prior conviction) that exposes a defendant to a sentence in excess of the relevant statutory maximum must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence. See 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435. The Court has applied the rule of Apprendi to facts subjecting a defendant to the death penalty, Ring v. Arizona, 536 U.S. 584, 602, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556, facts permitting a sentence in excess of the "standard range" under Washington's Sentencing Reform Act (Reform Act), Blakely v. Washington, 542 U.S. 296, 304-305, 124 S.Ct. 2531, 159 L.Ed.2d 403, and facts triggering a sentence range elevation under the then-mandatory Federal Sentencing Guidelines, United States v. Booker, 543 U.S. 220, 243-244, 125 S.Ct. 738, 160 L.Ed.2d 621. Blakely and Booker bear most closely on the question presented here.

Cunningham, 127 S.Ct. at 857.

In Cunningham, the Court held that  held that California's determinate sentencing law, which authorized the judge, not the jury, to find facts exposing a defendant to an elevated upper term sentence, violated the defendant's Sixth and Fourteenth Amendment  rights to trial by jury.   The Court explained, "the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." Id. at 859.  In support, the Court cited  Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000); Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428 (2002); Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531(2004); and United States v. Booker, 543 U.S. 220, 125 S.Ct. 738.  In reaching this conclusion, the Court rejected the decision in People v.

61

Black.,35 Cal.4th 1238, 29 Cal.Rptr.3d 740 (2005), in which the California Supreme Court found that California's upper term determinate sentencing law procedure was constitutional under Apprendi, Blakely, and Booker.

On June 9, 2008, the Ninth held that Cunningham thus did not announce a new rule of constitutional law and may be applied retroactively on collateral review. Butler v. Curry, 528 F.3d 624, 639 (9th Cir. 2008), _____ U.S. ___, 77 U.S.L.W. (Dec. 15 2008). The Ninth Circuit found that the result in Cunningham was compelled by the precedent found in Apprendi, Blakely, and Booker. Butler, 528 F.3d at 635. In particular, the Ninth Circuit held that Cunningham, "simply applied the rule of Blakely to a distinct but closely analogous state sentencing scheme. That the Supreme Court held for the first time that *California's* sentencing scheme violates the Sixth Amendment does not render its decision in Cunningham a new rule." Butler, 528 F.3d at 636 (italics in original). Thus, in addressing the petitioner's claim in Butler, the Ninth Circuit relied upon the decision in Blakely, which had been decided before the petitioner's conviction became final.

In this case, the California Supreme Court denied Petitioner's petition for review on January 16, 2002. The state appeal process became "final" within the meaning of Section 2244(d)(1)(A) when the time for filing a petition for writ of certiorari expired ninety days later. Supreme Court Rule 13, Bowen v. Roe, 188 F.3d 1157 (9th Cir. 1999). Blakely was not decided until 2004. Therefore, Butler is not applicable to the present case. See Schardt v. Payne, 414 F.3d 1025 (2005) (holding that Blakely could not be applied retroactively on collateral review to decision that was final before it was decided). This court notes that Apprendi was decided in 2000, before the conviction in the present case became final. This court, however, is unaware of any controlling authority holding that the decision in Cunningham was dictated by Apprendi alone. Thus, this court rejects the claim that Cunningham must be applied retroactively to the date Apprendi was decided.

This court concludes, therefore, that this claim presents no basis for habeas relief.

Motion to Substitute Counsel

Petitioner contends in this forty-fourth claim, set forth in the amendment to his petition filed June 4, 2007, that the trial court erred in denying one of his motions to substitute counsel. Petitioner claims that he told the trial court that his counsel was ineffective for failing to investigate or present evidence of an alibi defense. Petitioner presented this claim to the California Supreme Court in his petition for writ of habeas corpus.

As stated above, in determining whether a motion to substitute counsel was improperly denied, the court must consider three factors: "(1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense." Petitioner's mere allegations that he believed his attorney was not adequately investigating and presenting evidence regarding a particular defense is insufficient to show that his relationship with counsel was below that required by the Sixth Amendment right to counsel. Petitioner thus has not met his burden of showing that the California Supreme Court, in rejecting this claim, reached a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). This claim therefore provides no basis for habeas relief.

Hearing Loss

In his forty-fifth claim, set forth in the amendment to his petition filed June 4, 2007, Petitioner contends that loud noises in the Fresno County Jail caused him hearing loss which violated his right to due process. Petitioner presented this claim to the California Supreme Court in his petition for writ of habeas corpus.

As Respondent argues, the record in this case shows that Petitioner was able to

interact with the court on the record, and Petitioner does not present any evidence to the contrary.  Respondent notes that one of the last reported hearings in this case reflects an interaction between Petitioner and the trial court and there is no indication that Petitioner's hearing was impaired in any way.  Petitioner thus has not met his burden of showing that the California Supreme Court, in rejecting this claim, reached a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  This claim therefore provides no basis for habeas relief.

Misdemeanor Battery Conviction

Petitioner contends in his forty-sixth claim, set forth in the amendment to his petition filed June 4, 2007, that his conviction on count 16 of misdemeanor battery is barred by the statute of limitations.  Petitioner presented this claim to the California Supreme Court in his petition for writ of habeas corpus.

In count 16, Petitioner was originally charged with felony corporal injury of a spouse/cohabitant.  Petitioner requested a jury instruction on that count allowing the jury to find him guilty of a lesser included offense of misdemeanor battery.  In California, "a defendant who has been timely charged with a felony offense may assert the statute of limitations as a defense to prevent conviction of a time-barred lesser included misdemeanor offense.  [Citations.] (*See* Pen.Code § 805, subd.(b.).)" People v. Terry, 127 Cal.App.3th 750, 767 (Cal.Ct.App. 2005).  In the present case, Petitioner made no such assertion.  To the contrary, Petitioner expressly requested the instruction on the lesser included offense.  The California Supreme Court could have reasonably found that by so doing, Petitioner waived his right to later claim that his conviction was barred by the statute of limitations.  This court finds, therefore, that Petitioner thus has not met his burden of showing that the California Supreme Court, in rejecting this claim, reached a decision that was contrary to, or involved

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). This claim provides no basis for habeas relief.

Petitioner may seek to appeal from the judgment of the court in this case. Petitioner cannot proceed on such an appeal absent a certificate of appealability. The controlling statute, 28 U.S.C. § 2253, provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or
> (B) the final order in a proceeding under section 2255.
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In the present case, the court finds no denial of a constitutional right. Accordingly, a certificate of appealability will be denied.

Based on the foregoing, IT IS HEREBY ORDERED as follows:

1)      This petition for writ of habeas corpus is DENIED;

2)      A certificate of appealability is DENIED;

3)      The Clerk of the Court is directed to enter judgment for Respondent and to close this case.

IT IS SO ORDERED.

**Dated:**   **February 20, 2009**                    _____/s/ Oliver W. Wanger_____
                                                        UNITED STATES DISTRICT JUDGE